

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00224-CV

**TEXAS DEPARTMENT OF AGING AND DISABILITY SERVICES**
dba San Antonio State Supported Living Center,
Appellant

v.

Adrian **COMER**,
Appellee

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CI12399
Honorable Rosie Alvarado, Judge Presiding

Opinion by:  Patricia O. Alvarez, Justice

Sitting:  Karen Angelini, Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  January 24, 2018

REVERSED AND DISMISSED

Appellee Adrian Comer sued his employer, Appellant Texas Department of Aging and Disability Services (DADS), for discrimination based on his disability, failure to provide a reasonable accommodation, and retaliation.  DADS's plea to the jurisdiction challenged the existence of jurisdictional facts and asserted its immunity from suit.  The trial court denied the plea, and DADS appeals.  Because DADS conclusively negated at least one essential element of each of Comer's claims, and Comer failed to raise a genuine issue of material fact, we reverse the trial court's order and dismiss Comer's suit for want of jurisdiction.

**BACKGROUND**

Adrian Comer was employed by the Texas Department of Aging and Disability Services, a state agency that serves aging people and those with cognitive and physical disabilities. Comer worked for DADS for about sixteen years as a Direct Support Professional (DSP) at the San Antonio State Supported Living Center (SASSLC).[1] The Center provides round-the-clock care for its residents through its staff, including DSPs such as Comer. After Comer had some health issues, Comer's doctor certified that Comer was fit for duty as a DSP, but only for one eight-hour shift per day, and the shift had to be at night.

DADS insisted that an essential function of a DSP is to work a second, consecutive eight-hour shift when needed, and that requirement applied to Comer. Comer contended that he has a disability and excusing him from the mandatory overtime policy[2] was a reasonable accommodation. DADS disagreed and would not reinstate Comer as a DSP. DADS asserts it was unable to find another job that Comer was qualified to fill, with or without a reasonable accommodation, and it terminated Comer's employment.

Comer sued DADS and alleged it discriminated against him because of his disability because DADS failed to accommodate Comer's request to work only a night shift and not more than eight hours at a time. Comer also sued DADS for retaliation alleging DADS fired him because he filed an EEOC grievance about DADS's failure to provide his requested accommodation.

In its plea to the jurisdiction, DADS argued that Comer failed to allege a prima facie case for any of his claims, its immunity from suit was not waived for any of Comer's claims, and the

---

[1] Comer started work for the Texas Department of Mental Health and Mental Retardation (TDMHMR) in March 1999. TDMHMR was dissolved in 2004 and DADS took over responsibility for the SASSLC.

[2] The Rotational Coverage Policy was implemented on October 13, 2014, revised on January 14, 2015, and formally approved on January 22, 2015. By its plain language, the policy applies to DSP I, II, and III personnel. It requires employees designated on the Rotational Shift Record Book to stay until released, and any "[s]taff that leaves without being released will be subject to disciplinary action."

trial court had no jurisdiction over Comer's suit. After a hearing, the trial court denied the plea, and DADS appeals arguing that its immunity from suit was not waived.[3]

### IMMUNITY FROM SUIT

Governmental units have immunity from suit except where that immunity is waived by the legislature. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.025 (West 2011); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635–36 (Tex. 2012). The legislature, through the Texas Commission on Human Rights Act (TCHRA),[4] waived a governmental unit's immunity "for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." *Garcia*, 372 S.W.3d at 636.

It is the plaintiff's burden to allege a prima facie case—to plead facts that, if uncontroverted, establish each essential element of the cause of action. *See id.* at 632, 637; *see also In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) ("[A] 'prima facie case' . . . refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted.").

"[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *accord Garcia*, 372 S.W.3d at 635.

After the plaintiff meets its burden to allege a prima facie case, if "the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiff[], when the facts underlying the merits and subject matter jurisdiction are intertwined, to

---

[3] It is undisputed that DADS is a governmental unit under the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.002 (West 2011) (identifying Chapter 101 of the Civil Practice and Remedies Code as the Texas Tort Claims Act).

[4] *See* Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 1, sec. 21.001, 1993 Tex. Gen. Laws 987, 993 (codified at TEX. LABOR CODE § 21.001).

show that there is a disputed material fact regarding the jurisdictional issue." *Miranda*, 133 S.W.3d at 228; *accord Garcia*, 372 S.W.3d at 635, 637; *Mesquite Indep. Sch. Dist. v. Mendoza*, 441 S.W.3d 340, 343 (Tex. App.—Dallas 2013, no pet.) (citing *Garcia*, 372 S.W.3d at 637) (noting that if a plaintiff pleads facts for each element of a prima facie case but the defendant "present[s] evidence negating those facts, . . . the plaintiff must then *present evidence* in support of the [plaintiff's pleaded] facts." (emphasis added)).

If the defendant's "evidence affirmatively negate[s] a jurisdictional fact," *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008), and the plaintiff "fails to raise a fact question on the jurisdictional issue," *Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 228, the governmental unit's immunity is not waived and the claim may be dismissed for want of jurisdiction, *see Garcia*, 372 S.W.3d at 637; *Lopez*, 259 S.W.3d at 150; *Miranda*, 133 S.W.3d at 228.

## STANDARD OF REVIEW

In reviewing a trial court's "ruling on a plea to the jurisdiction, [we] must determine whether facts have been alleged that affirmatively demonstrate jurisdiction in the trial court." *Lopez*, 259 S.W.3d at 150 (citing *Miranda*, 133 S.W.3d at 225). We liberally construe the pleadings in the plaintiff's favor, but we "must also consider evidence tending to negate the existence of jurisdictional facts when necessary to resolve the jurisdictional issues raised." *Id.* (citing *Miranda*, 133 S.W.3d at 227); *accord Tex. Dep't of State Health Servs. v. Rockwood*, 468 S.W.3d 147, 154 (Tex. App.—San Antonio 2015, no pet.) ("[We] consider whether [the plaintiff] pled the basic facts that make up a prima facie case for [his] TCHRA claims and whether the Department conclusively negated one of those basic facts.").

The questions of "[w]hether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction," *Miranda*, 133 S.W.3d at 226, whether the State has negated the existence of the plaintiff's jurisdictional facts, *Lopez*, 259 S.W.3d at 150, and whether

- 4 -

the plaintiff has successfully raised a fact question on the jurisdictional issue are questions of law we review de novo, *id.* (citing *Miranda*, 133 S.W.3d at 226–28).

### DISCRIMINATION CLAIM

Comer alleges DADS violated the TCHRA by its acts against him of discrimination and retaliation. *See* TEX. LABOR CODE ANN. §§ 21.051 (Discrimination by Employer), 21.055 (Retaliation) (West 2015). As a part of his discrimination claim, Comer alleges DADS failed to provide him with his requested reasonable accommodation. We begin with the discrimination claim.

### A.      DADS Arguments

DADS argues the trial court erred in denying its plea to the jurisdiction against Comer's discrimination claim because Comer failed to meet his burden to show that he has a disability and that he is qualified for the job. DADS insists (1) there is no evidence that Comer is disabled, (2) Comer's own evidence conclusively proves Comer cannot perform all the essential functions of a DSP, and (3) his requested accommodation of waiving the mandatory overtime policy as to Comer is not reasonable as a matter of law.

### B.      Comer's Arguments

Comer contends DADS fired him because of his disability. He insists he can perform all the essential functions of a DSP with the reasonable accommodation of DADS allowing him to work only nights and not more than eight hours per day. Comer cites his affidavit as evidence that the mandatory overtime policy has been waived as to other employees, and thus he has raised a fact question on whether mandatory overtime is an essential function of his job.

### C.      Applicable Law

The anti-discrimination statute at issue here is section 21.051 of the Texas Labor Code; it reads as follows:

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LABOR CODE ANN. § 21.051.

"Because the TCHRA was enacted in part to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments,' we look to relevant federal law for guidance when the relevant provisions of Title VII are analogous." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136–37 (Tex. 2015); *accord Garcia*, 372 S.W.3d at 633–34.

"To establish a prima facie case of disability discrimination, a plaintiff must show that (1) he has a 'disability;' (2) he is 'qualified' for the job; and (3) he suffered an adverse employment decision because of his disability." *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 436 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *accord Rockwood*, 468 S.W.3d at 156; *Davis v. City of Grapevine*, 188 S.W.3d 748, 765 (Tex. App.—Fort Worth 2006, pet. denied).

"In determining whether a plaintiff is a 'qualified individual' with a disability, the court must first determine whether the plaintiff can perform the essential functions of the job he holds." *Davis*, 188 S.W.3d at 765 (quoting *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993)); *accord Donaldson*, 495 S.W.3d at 436.

"The plaintiff can show the 'qualification' element in one of two ways: (1) by proving that he can perform all essential job functions with or without modifications or accommodations; or

(2) by showing that some reasonable accommodation by the employer would enable him to perform the job." *Donaldson*, 495 S.W.3d at 437 (citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996)).

"We cannot say that [the plaintiff] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the plaintiff] not to perform those essential functions." *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997). A function is essential if it "bear[s] more than a marginal relationship to the job at issue." *Chandler*, 2 F.3d at 1393; *accord Tex. Dep't of Family & Protective Servs. v. Howard*, 429 S.W.3d 782, 790 (Tex. App.—Dallas 2014, pet. denied).

"If the court concludes that the plaintiff is not able to perform the essential functions of the job, the court must then determine whether any reasonable accommodation by the employer would enable the plaintiff to perform those functions." *Davis*, 188 S.W.3d at 766. It is the plaintiff's burden "to demonstrate, as part of his prima facie case, that an accommodation of his disability exists and that such accommodation is reasonable." *Id.* at 763.

"If no reasonable accommodation would enable the plaintiff to perform the essential functions of his position, then he is not a 'qualified individual' with a disability." *Id.* at 766; *accord Barber*, 130 F.3d at 709.

## D.    Analysis

To meet his burden to allege a prima facie case of discrimination, Comer had to plead facts that he (1) has a disability, (2) he was a qualified individual for the DSP I job, and (3) DADS terminated his employment because of his alleged disability. *See Donaldson*, 495 S.W.3d at 436; *Davis*, 188 S.W.3d at 765.

In our review of the pleadings and evidence, we take as true the evidence favorable to Comer, including the statements in his affidavit. *See Miranda*, 133 S.W.3d at 228.

*1.      Comer's Prima Facie Evidence*

Comer filed an affidavit that identified Joe Compian and DeeAnn Ramirez as former DADS employees who Comer avers were excused from compliance with the mandatory overtime policy.[5]  Comer's affidavit does not state the dates that Compian or Ramirez were excused from complying with the mandatory overtime policy, but making a reasonable inference in Comer's favor, we infer that Compian and Ramirez were granted an accommodation of not complying with the mandatory overtime policy.  *See id.*

Comer filed a doctor's Fitness for Duty Certification, dated September 3, 2015, that states Comer was fit for duty except that he could not work more than eight hours at a time.  He also filed a doctor's note dated January 28, 2016, reiterating that Comer could work no more than eight hours per day and should work only at night.

Construing Comer's pleadings liberally in favor of jurisdiction, we conclude Comer pled facts for each element and he met his burden to allege a prima facie case of discrimination.  *See* TEX. LABOR CODE ANN. § 21.051; *Garcia*, 372 S.W.3d at 637.

*2.      DADS's Negating Evidence*

DADS submitted evidence to affirmatively negate Comer's jurisdictional facts, and we must consider it.  *See Lopez*, 259 S.W.3d at 150; *Miranda*, 133 S.W.3d at 227.

DADS's evidence includes two affidavits and a Position Statement.  DADS argues that its evidence shows Compian and Ramirez, the former DADS employees Comer cited in his affidavit, ended their employment with DADS before the mandatory overtime policy was officially

---

[5] Comer's affidavit also included statements from two other former DADS employees opining that mandatory overtime was not always enforced.  DADS objected to the two statements as hearsay.  The trial court sustained the objections and struck those statements from Comer's affidavit.  We do not consider the stricken statements.

approved, and thus there is no evidence that the mandatory overtime policy was ever waived as a reasonable accommodation since the policy was formally approved in January 2015.

DADS filed an affidavit from Amy Tippie, Deputy Director of Human Resources at Texas Health and Human Services Commission.[6] Tippie's affidavit states that Compian left DADS's employment in 2007, years before the Rotational Coverage Policy was implemented on October 13, 2014. Tippie's affidavit also states that Ramirez left DADS's employ on December 1, 2014, which is after the mandatory overtime policy was implemented but before it was formally approved.

DADS also filed an affidavit from Ralph Henry, the Director of the SASSLC, which states "[the Center] has never discharged a DSP employee from compliance with its Rotational [C]overage [P]olicy as an accommodation request, including Plaintiff. Compliance with this policy is mandatory for all DSP staff at the SASSLC."

DADS's evidence also includes a Position Statement from the Civil Rights Director at Texas HHSC that states "working a second shift or beyond one eight hour shift is an essential function of the [DSP] job."

DADS's evidence affirmatively negated Comer's prima facie evidence that mandatory overtime was not an essential function of the DSP position. *See Lopez*, 259 S.W.3d at 150; *Mendoza*, 441 S.W.3d at 343.

*3.	Comer's Burden to Raise a Fact Question*

To raise a fact question on whether the mandatory overtime policy was an essential function of the DSP position, Comer had the burden to produce some evidence that a DSP

---

[6] Tippie's affidavit shows the dates that the employees ended their employment with DADS was February 1, 2007, for Joe Compian and December 1, 2014, for DeeAnn Ramirez.

employee had been excused from the mandatory overtime policy after it was implemented. *See Lopez*, 259 S.W.3d at 150; *Miranda*, 133 S.W.3d at 227–28; *Mendoza*, 441 S.W.3d at 343.

Comer failed to produce any evidence that any DADS employee was ever granted an accommodation by being excused from complying with the mandatory overtime policy that was implemented on October 13, 2014. *Contra Lopez*, 259 S.W.3d at 150; *Mendoza*, 441 S.W.3d at 343. From Comer's prima facie evidence case, we could infer that fact, but once DADS submitted evidence that affirmatively negated that jurisdictional fact, Comer had the burden to present evidence to raise a fact question. *See Mendoza*, 441 S.W.3d at 343 (noting that if the defendant "present[s] evidence negating [jurisdictional] facts, . . . the plaintiff must then *present evidence* in support of the [plaintiff's pleaded] facts" (emphasis added)); *see also Garcia*, 372 S.W.3d at 635. But Comer did not present any evidence. *Contra Garcia*, 372 S.W.3d at 635; *Mendoza*, 441 S.W.3d at 343. Thus, Comer failed to raise a fact question on whether complying with the mandatory overtime policy was an essential function of the DSP position. *See Lopez*, 259 S.W.3d at 150; *Mendoza*, 441 S.W.3d at 343.

### 4. *DADS's Plea to the Jurisdiction*

DADS's evidence that the mandatory overtime policy was an essential function of the DSP job stands unrebutted by any evidence from Comer. Henry's affidavit states that no Center employee has been granted an accommodation by being excused from complying with the mandatory overtime policy. Henry's statement covers the relevant period—the time after which the policy was implemented or formally approved.

Comer does not aver that he has knowledge of any DADS employee that was granted an accommodation and excused from compliance with the mandatory overtime policy after it was implemented or formally approved. Further, Comer's own evidence establishes that he was not able to work beyond an eight-hour shift, which is an essential function of the DSP position.

Because the evidence, for the purposes of this plea to the jurisdiction, conclusively establishes that Comer was unable to perform an essential function of the DSP position, we move to the second question—"whether any reasonable accommodation by [DADS] would enable [Comer] to perform those functions." *See Davis*, 188 S.W.3d at 766.

### FAILURE TO ACCOMMODATE CLAIM

DADS argues that its immunity from suit was not waived for Comer's failure to accommodate claim because Comer failed to meet his prima facie evidence burden.

> For a plaintiff to establish a prima facie case of discrimination based on an employer's failure to provide a reasonable accommodation, the plaintiff must show: (1) that he is an individual who has a disability within the meaning of the ADA; (2) that an employer covered by the statute had notice of his disability; (3) that with reasonable accommodations he could perform the essential functions of the position; and (4) that the employer has refused to make such accommodations.

*Davis*, 188 S.W.3d at 758 (footnote omitted). Further, it is the plaintiff's burden "to demonstrate, as part of his prima facie case, that an accommodation of his disability exists and that such accommodation is reasonable." *Id.* at 763.

Of the four prongs identified by *Davis*, three need little discussion. For the first, DADS asserts that Comer is not disabled, but because another prong is dispositive, we need not address the first. For the second, DADS does not dispute that it had notice of Comer's medical conditions; for the fourth, the parties agree that DADS did not grant Comer his requested accommodation.

The remaining prong is the third: whether Comer—with or without a reasonable accommodation—could perform the essential functions of the DSP position. *See id.* at 758. Comer pleads that waiving the mandatory overtime policy with respect to him is a reasonable accommodation, and his affidavit states that DADS has waived the policy for others.

But DADS submitted evidence that mandatory overtime was an essential function of the DSP position. It submitted a copy of the mandatory overtime policy, it emphasized the importance

of the policy in maintaining a minimum acceptable level of staffing to ensure patient safety and care in case oncoming shift members failed to show up, and it recited the need for a balanced burden of overtime among all its DSP staff. *See Chandler*, 2 F.3d at 1393 (describing a function as essential if it "bear[s] more than a marginal relationship to the job at issue"); *accord Howard*, 429 S.W.3d at 790. It also provided the Texas HHSC's Position Statement, which, after it conducted an independent investigation, concluded that "working a second shift or beyond one eight hour shift is an essential function of the [DSP] job."

This evidence affirmatively negates Comer's unsupported statement that working mandatory overtime was not an essential function of the DSP position; Comer's statement that other employees were excused from the mandatory overtime policy—given his statement's complete lack of dates or instances—is no evidence. Considering all the evidence, we conclude that DADS's affidavits and the other evidence establish that the mandatory overtime policy is an essential function of the DSP job, *see Chandler*, 2 F.3d at 1393; *Howard*, 429 S.W.3d at 790, and Comer's pleadings and affidavit fail to raise a genuine issue of material fact, *see Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 228.

## DISPOSITION OF DISCRIMINATION, FAILURE TO ACCOMMODATE CLAIMS

Comer failed to raise a genuine issue of material fact that he was "a 'qualified individual' with a disability," an essential element of a discrimination claim, because he cannot perform the essential functions of a DSP position and he provided no evidence of a reasonable accommodation that would allow him to perform all the essential functions of a DSP. *See Donaldson*, 495 S.W.3d at 436; *Davis*, 188 S.W.3d at 766. Comer insists, and his own evidence shows, he cannot work more than one eight-hour shift per day. *See Davis*, 188 S.W.3d at 765; *accord Donaldson*, 495 S.W.3d at 436.

DADS's evidence conclusively established that the mandatory overtime policy is an essential function of the DSP position, *see Chandler*, 2 F.3d at 1393; *Howard*, 429 S.W.3d at 790, and Comer failed to produce any evidence to raise a genuine issue of material fact on that question, *see Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 228.

Further, DADS was not obligated to relieve Comer from the essential function of working mandatory overtime, to create a new type of position to fit Comer's limitation, or to assign existing DSPs to cover Comer's mandatory overtime shifts. *See Davis*, 188 S.W.3d at 763 ("[T]he ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." (citing *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999)); *see also Barber*, 130 F.3d at 709 ("We cannot say that [the plaintiff] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the plaintiff] not to perform those essential functions."); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996) ("[A]n accommodation that would result in other employees having to work harder or longer is not required under the ADA.").

Taking the evidence favoring Comer as true, we nevertheless conclude that DADS established that (1) working overtime as required by the mandatory overtime policy is an essential function of the DSP position and (2) Comer's proposed accommodation of waiving the mandatory overtime policy as to him was not a reasonable accommodation. *See Chandler*, 2 F.3d at 1393 (essential function); *Davis*, 188 S.W.3d at 758 (accommodation burden on plaintiff). DADS met its burden, but Comer failed to raise a genuine issue of material fact on either question. *See Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 228.

Therefore, DADS's immunity was not waived, and the trial court should have granted DADS's plea to the jurisdiction on Comer's discrimination and failure to accommodate claims. *See Garcia*, 372 S.W.3d at 637; *Miranda*, 133 S.W.3d at 228.

## RETALIATION CLAIM

In his original petition, Comer claims he was wrongfully terminated for filing a grievance about DADS's failure to provide him with a reasonable accommodation, and that his involuntary termination was DADS's act of retaliation.

## A.      Applicable Law

"In an action arising under [Texas Labor Code section 21.055], the plaintiff must first make a prima facie showing that: (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action." *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)); *accord San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015).

> Evidence sufficient to establish a causal link between an adverse employment decision and a protected activity may include: "(1) the employer's failure to follow its usual policy and procedures in carrying out the challenged employment actions; (2) discriminatory treatment in comparison to similarly situated employees; (3) knowledge of the discrimination charge or suit by those making the adverse employment decision; (4) evidence that the stated reason for the adverse employment decision was false; and (5) the temporal proximity between the employee's conduct and discharge."

*Donaldson*, 495 S.W.3d at 444.  Without other evidence to establish a causal link, the temporal proximity between the protected activity and the adverse action becomes especially important; courts have determined that, without other evidence, periods of six, five, four, and even three months between the activity and the adverse action are too long to support a causal link.  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (reciting periods of three and four months as

too long—without other evidence of causality); *Donaldson*, 495 S.W.3d at 444 (reciting periods of five and six months as too long).

## B.    Comer's Burden

Comer had an initial burden to establish a prima facie case of retaliation. *See Dias*, 214 S.W.3d at 676; *Rockwood*, 468 S.W.3d at 154 ("[A] plaintiff's failure to demonstrate the elements of a prima facie case means the trial court has no jurisdiction.").

If DADS met its evidentiary burden, Comer had the burden to raise a genuine issue of material fact on his retaliation claim. *See Miranda*, 133 S.W.3d at 228; *see also Garcia*, 372 S.W.3d at 635, 637. If Comer failed to raise a fact issue, then DADS's immunity was not waived. *See Garcia*, 372 S.W.3d at 637; *Miranda*, 133 S.W.3d at 228.

## C.    Evidence of Retaliation

DADS does not argue that Comer's filing a grievance was not a protected activity. Comer filed his grievance on December 8, 2015; DADS supervisors knew about Comer's grievance within weeks after he filed it; and Comer was involuntarily terminated on June 20, 2016. *See Dias*, 214 S.W.3d at 676 (elements of retaliation claim).

The remaining question on the jurisdictional evidence pertaining to Comer's retaliation claim is whether there was a causal link between Comer's grievance and his involuntary termination. *See Donaldson*, 495 S.W.3d at 444 (listing types of evidence to show a causal link). Comer did not submit any evidence of a causal link—other than his unsupported allegation in his pleadings that DADS terminated him because he filed a grievance. In his affidavit, Comer does not make any statement that supports his allegation of retaliation or point to any other evidence establishing a causal link. *Contra id.* The only remaining factor to establish a causal link is the temporal proximity of Comer's grievance and his involuntary termination. Those events were

separated by about six months, and without other evidence, a six-month gap between the two events is no evidence of causality. *See Breeden*, 532 U.S. at 274; *Donaldson*, 495 S.W.3d at 444.

**D.      DADS's Evidence Negated Causal Link**

Comer failed to establish a prima facie case of retaliation, but assuming *arguendo* he did, DADS offered controverting evidence to affirmatively negate a causal link. *See Lopez*, 259 S.W.3d at 150.

In its plea to the jurisdiction, DADS submitted numerous documents as evidence that it followed its personnel procedures in addressing Comer's absences and fitness for duty certifications. Its evidence included statements and documents showing that other similarly-situated employees without disabilities were also terminated. *See Donaldson*, 495 S.W.3d at 444.

In his response, Comer did not offer any evidence to raise a genuine issue of material fact on causal link nor did he make any argument that he had done so. *See id.* (elements of retaliation); *see also Garcia*, 372 S.W.3d at 635 (plaintiff's burden). Similarly, in his appellate brief, Comer argues only that he raised a fact question on whether the mandatory overtime policy was an essential function of the DSP position—an element of his discrimination and failure to accommodate claims—not that he raised a genuine issue of material fact on his retaliation claim. *See Garcia*, 372 S.W.3d at 635 (requiring plaintiff, if defendant negates existence of jurisdictional fact, to raise genuine issue of material fact on challenged element).

We conclude Comer failed to establish a prima facie case of retaliation. *See Donaldson*, 495 S.W.3d at 444. Even assuming he did, after DADS negated his jurisdictional evidence, Comer did not submit any evidence to raise a genuine issue of material fact on a causal link—an essential element of his retaliation claim. *See Garcia*, 372 S.W.3d at 635; *Dias*, 214 S.W.3d at 676. Thus, for his retaliation claim, Comer failed to establish a prima facie case or raise a genuine issue of

material fact, and DADS's immunity was not waived. *See Garcia*, 372 S.W.3d at 637; *Miranda*, 133 S.W.3d at 228.

## CONCLUSION

For his discrimination and failure to accommodate claims, Comer met his burden to establish a prima facie case. But after DADS's evidence affirmatively negated the existence of Comer's jurisdictional facts, Comer failed to raise a genuine issue of material fact on the challenged elements in either claim. Thus, DADS's immunity was not waived, and the trial court should have granted DADS's plea on these claims.

For his retaliation claim, Comer failed to meet his prima facie burden or raise a genuine issue of material fact on a causal link between his filing a grievance and his involuntary termination. He failed to show that DADS's immunity from suit was waived, and the trial court should have granted DADS's plea on the retaliation claim.

Because DADS met its burden to conclusively negate the existence of Comer's jurisdictional facts on each of Comer's claims, and Comer failed to raise a genuine issue of material fact on the challenged essential elements, the trial court should have granted DADS's plea to the jurisdiction and dismissed the suit. We reverse the trial court's order and dismiss Comer's suit for want of jurisdiction.

Patricia O. Alvarez, Justice