**AFFIRM in part; Reverse and Dismiss in part; Opinion Filed April 15, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00817-CV

**TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellant**
**V.**
**CARLOTTA HOWARD, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-13467**

# OPINION

Before Justices FitzGerald, Francis, and Myers

Opinion by Justice Myers

The Texas Department of Family and Protective Services appeals the trial court's order denying its plea to the jurisdiction to the claims of unlawful employment practices brought by Carlotta Howard. The Department brings one issue contending the trial court erred by denying the plea to the jurisdiction because Howard did not create a fact issue on her prima facie disability claim. We reverse the trial court's order denying the plea to the jurisdiction in part and affirm it in part.

### BACKGROUND

Howard began working for the Department on July 30, 2007 as a Human Services Tech III, a case aide. Howard's tasks included transporting children, visiting with families, delivering Christmas toys, and administrative assistant work. The administrative work included observing

and taking notes during parents' visitations with their children. Most of Howard's work involved driving.

On December 16, 2008, Howard was delivering Christmas presents as part of her job when her car was struck on the driver's side by a truck that failed to stop at an intersection. Howard was taken by ambulance to the hospital and was released after several hours. Howard's injuries in the accident included a severely bruised collarbone, bruises to vertebrae, injuries to the ligaments in both arms, cervicothoracic sprain, lumbosacral dorsal sprain, herniated nucleus pulposus, and bilateral lumbar radiculitis. Howard also suffered from anxiety and depression due to the pain.

At the time of the accident, Howard had 123 hours of sick leave and 72 hours of annual leave. Howard filed an application for workers' compensation benefits. She elected to use only her sick leave and none of her annual leave for her lost time due to her injuries. Howard's sick leave was exhausted in mid-January 2009. Howard was placed on leave under the Family & Medical Leave Act (FMLA) from April 20 to July 25, 2009.

Shortly after Howard's accident, while she was at home recuperating, the Department reorganized its assignment of case aides, and appellant was transferred to a different unit of the Department supervised by Nicole Ogle. Ogle was on maternity leave at the time of Howard's accident and the reorganization. When Ogle returned to work in February 2009,[1] she learned that Howard had been transferred to her unit and was on workers' compensation leave. Ogle contacted Howard to find out when she would return to work, and Howard said that determination was up to her doctor. Howard later sent Ogle a work status report, which stated that Howard's condition would continue until April. In April, Ogle again contacted Howard, who said she could not return to work due to back pain. Howard's doctor sent a Return to Work

---

[1] Unless otherwise noted, all dates are during the year 2009.

Certificate to Ogle stating that Howard could not return to work until further notice and that Howard's next appointment was May 6. In late May, Ogle tried to contact Howard's doctor, but the doctor did not return Ogle's phone calls. Ogle called Howard, who said she had blurry vision due to her medications and was still suffering back spasms. In July, Ogle again contacted Howard, who stated she was unable to return to work.

Ogle then contacted Larry Barnes at the Department's regional office, explained that Howard had exhausted her sick leave and FMLA leave and asked how to proceed. Barnes directed Ogle to prepare a dismissal recommendation packet. Ogle prepared the dismissal packet recommending Howard's termination, which was approved by the Program Director and Program Administrator, who signed the recommendation. The dismissal packet was then reviewed by the Positive Performance Committee, which agreed with the termination recommendation. The packet then went to Lisa Black, the Regional Director for the Department, who had the final say on whether Howard would be terminated.

Black sent a letter to Howard stating that her dismissal had been recommended. Howard met with Black and told Black about the pain she was in. Howard asked for light duty in the form of working only four hours per day doing administrative duties in the office. Howard also told Melissa Hobbs, Black's assistant, that her doctor wanted her to work only four hours per day until Howard had weaned herself off of her medicines. Howard told Hobbs she thought that she would be working part time for only two or three weeks, but Howard did not have any documentation from her doctor stating she could return to work full time after two or three weeks. Howard told Hobbs she would get more specific documentation from her doctor. On October 9, Howard's doctor signed a work status report stating Howard could return to work on October 12 with the restriction that she work only 4 hours per day. The work status report did not state when Howard could return to work full time. After receiving the work status report,

Black made the decision to terminate Howard. On October 16, Black sent a letter to Howard notifying her of her termination. The letter stated it was the Department's policy that an employee who exhausts all leave entitlements and does not return to work may be dismissed.

On October 20, Howard filed a charge of workplace discrimination with the Texas Workforce Commission, Civil Rights Division. Howard alleged she had been "discriminated against because of [her] disability in violation of the Americans with Disabilities Act." She also alleged that on October 9, she "was denied a reasonable accommodation of working four (4) hours [sic] work days, due to [her] medical condition." On October 20, 2011, Howard filed suit against the Department, alleging she was disabled, the Department discriminated against her in violation of chapter 21 of the Texas Labor Code by terminating her because of her disability, and that the Department failed to reasonably accommodate her disability because it refused to permit her to use her annual leave to work part time.

The Department filed a plea to the jurisdiction asserting Howard failed to show the elements of her prima facie case because she failed to present evidence that she was disabled, that the Department knew of her disability, and that the Department failed to accommodate any disability she had. The Department also asserted that Howard failed to exhaust her administrative remedies. The trial court denied the plea to the jurisdiction, and the Department brought this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2013).

## PLEA TO THE JURISDICTION

In its sole issue, the Department contends "[t]he trial court erred in denying [its] plea to the jurisdiction because [Howard] did not create a fact issue on her prima facie disability claim."

Governmental entities are immune from suit unless the government has clearly and unambiguously waived its immunity. *See* TEX. GOV'T CODE ANN. 311.034 (West 2013); *Tex.*

–4–

*Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Chapter 21 of the Texas Labor Code[2] provides that an employer commits an unlawful employment practice if because of disability, the employer discharges or otherwise discriminates against an individual in connection with compensation or the terms, conditions, or privileges of employment. TEX. LAB. CODE ANN. § 21.051(1) (West 2006). An employer also commits an unlawful employment practice by refusing to make a reasonable accommodation for the disability of a qualified employee. *Id.* § 21.128(a) (West Supp. 2013). The term "employer" in chapter 21 includes state agencies. *Id.* § 21.002(8). The State of Texas waives its immunity from suit when the plaintiff states a claim for conduct that would violate chapter 21 of the Texas Labor Code. *Mission Consolidated Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012).

A plea to the jurisdiction may challenge the plaintiff's pleading, the existence of the jurisdictional facts alleged in the pleading, or both. *Miranda*, 133 S.W.3d at 226. When the defendant challenges the existence of jurisdictional facts, the government must meet the summary judgment standard of proof. *Id.* at 228. Under that standard, the defendant must present conclusive proof regarding a jurisdictional fact. *See id.*; *see also Unifund CCR Partners v. Watson*, 337 S.W.3d 922, 926 (Tex. App.—Amarillo 2011, no pet.). If the defendant meets this burden, the plaintiff must present sufficient evidence to show there is a disputed issue of material fact regarding the jurisdictional issue or the plea to the jurisdiction will be sustained. *Miranda*, 133 S.W.3d at 228; *City of Dallas v. Heard*, 252 S.W.3d 98, 102 (Tex. App.—Dallas 2008, pet. denied). If the defendant fails to present conclusive proof of a fact negating

---

[2] Chapter 21 of the Texas Labor Code was formerly known as the Texas Commission on Human Rights Act or TCHRA. Following the abolition of the Texas Commission on Human Rights in March 2004, this Court no longer refers to chapter 21 as the TCHRA. *See ATI Enters., Inc. v. Din*, 413 S.W.3d 247, 249 n.3 (Tex. App.—Dallas 2013, no pet.); *Thomann v. Lakes Reg'l MHMR Ctr.*, 162 S.W.3d 788, 795 n.4 (Tex. App.—Dallas 2005, no pet.); *see also* LAB. § 21.0015 (powers and duties of Commission on Human Rights transferred to the Texas Workforce Commission civil rights division).

jurisdiction, the plaintiff has no burden to present evidence on the jurisdictional issue. *Unifund*, 337 S.W.3d at 926.

There are two alternative methods by which a plaintiff may establish a discriminatory treatment case. The first is by proving discrimination through direct evidence of what the defendant did and said. *Garcia*, 372 S.W.3d at 634. However, because direct evidence of discriminatory motive is usually hard to come by, the courts created a second method, the burden-shifting mechanism of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *Garcia*, 372 S.W.3d at 634. Under this approach, discrimination is presumed if the plaintiff meets an initial burden of establishing a prima-facie case of discrimination. *Garcia*, 372 S.W.3d at 634. A plaintiff proceeding under the *McDonnell Douglas* approach must meet the requirement of the prima-facie case for the trial court to have jurisdiction. *Id.* at 637. The failure to present the elements of a prima-facie case means the trial court has no jurisdiction and the claim must be dismissed. *Id.* Although a plaintiff must plead facts making up a prima-facie case, the defendant may present evidence negating those facts. If the defendant does so, the plaintiff must then present evidence in support of the facts. *Id.* The plaintiff "will only be required to submit evidence if the defendant presents evidence negating one of those basic facts." *Id.*

### Disability Discrimination

To establish a prima facie case of disability discrimination under chapter 21, a plaintiff must show (1) he has a "disability," (2) he is "qualified" for the job, and (3) he suffered an adverse employment decision "because of his disability."[3] *Davis v. City of Grapevine*, 188

---

[3] In its argument that the trial court erred by denying the plea to the jurisdiction concerning Howard's claim of disability discrimination under section 21.051(1), the Department argues only that Howard was not disabled. The Department presents no argument in this section of its brief that Howard was not qualified for the job or that she did not suffer an adverse employment decision because of her disability. Accordingly, we shall not address any elements other than whether Howard had a disability. *See Tex. Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986) (per curiam) ("The court of appeals may not reverse a trial court's judgment in the absence of properly assigned error."). In its argument concerning Howard's cause of action under section 21.128 for the Department's failure to make reasonable accommodations for her

S.W.3d 748, 757 (Tex. App.—Fort Worth 2006, pet. denied) (citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996)).  The Department argues it proved as a matter of law that Howard was not disabled when she was dismissed.  "Disability" in chapter 21 means, "with respect to an individual, a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment."  LAB. § 21.002(6).  "Disability" is broadly construed and "includes an impairment that is episodic or in remission that substantially limits a major life activity when active."  *Id.* 21.0021(a)(1), (2).  In chapter 21, "major life activity" includes, but is not limited to:

> caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.  The term also includes the operation of a major bodily function, including, but not limited to, functions of the immune system, normal cell growth, and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

LAB. 21.002(11-a).  An impairment "substantially limits" if the individual is

> [u]nable to perform a major life activity that the average person in the general population can perform; or [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Thomann v. Lakes Reg'l MHMR Ctr.*, 162 S.W.3d 788, 796 (Tex. App.—Dallas 2005, no pet.) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 480 (1999)).  The determination of whether an impairment substantially limits a major life activity is made without regard to the ameliorative effects of mitigating measures, including medication.  LAB. § 21.0021(b)(1).  "[D]iscrimination because of disability or on the basis of disability applies only to discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job."  *Id.* § 21.105.

---

disability, the Department does argue that Howard's requested accommodation of using her annual leave to work part time would not make her qualified to perform the essential functions of her position, and we address that issue in our discussion of the Department's arguments concerning Howard's claim of failure to reasonably accommodate her disability.

The Department argues it disproved as a matter of law the element of disability because the evidence conclusively established that Howard did not have a physical impairment when she was terminated. The Department cites to evidence that by April 2009, Howard was significantly better and drove herself to college classes and doctor's appointments. The Department also cites a letter from Howard's doctor in June 2009 stating Howard's "[r]ange of motion is essentially normal." That same document, however, showed Howard suffered significant pain and recommended she consult a pain specialist.[4] Howard testified she suffered frequent muscle spasms in her back, four or five times a week in May 2009, until she received epidural shots in her back in 2010, which was after her termination. Howard testified these muscle spasms "just immobilized me. I have to lay down. I couldn't lift up any weight, like carry my purse. It was very painful." Howard testified she took medicines to combat the muscle spasms, but two of those medicines made her dizzy, which made it unsafe for her to drive.

Howard's testimony that her muscle spasms, which immobilized her, caused her to lie down, and prevented her from lifting anything, raised a genuine issue of material fact that she suffered a physical impairment substantially limiting the major life activities of walking, standing, lifting, and working. She testified the spasms continued until she had the epidural shot in 2010 and that even then they occasionally occurred. The Department did not present evidence showing Howard was not subject to these muscle spasms when she was terminated. We conclude the Department did not establish as a matter of law that Howard did not have an impairment when she was terminated.

The Department also argues that Howard failed to present evidence showing she was impaired in October when the alleged discrimination occurred. However, Howard was under no

---

[4] The doctor stated in the report, "The patient rates pain at best and worst a 5 and 7 on a scale of 0 to 10 with 0 being no pain and 10 being intolerable pain. She states that symptoms still persist and are more prominent in the low back region than in the neck/upper back area. . . . The patient has persistent radicular symptoms extending into the right/left leg."

burden to present evidence on that matter until the Department first presented evidence establishing that she was not impaired in October. *See Garcia*, 372 S.W.3d at 637 ("a plaintiff . . . will only be required to submit evidence if the defendant presents evidence negating one of those basic facts"); *City of Austin v. Rangel*, 184 S.W.3d 377, 382 (Tex. App.—Austin 2006, no pet.) ("The defendant cannot simply deny the existence of jurisdictional facts and force the plaintiff to raise a fact issue."). Moreover, Howard testified that her debilitating muscle spasms constituted an impairment and that they continued until she received an epidural shot in 2010. This testimony constituted some evidence raising a fact question that her impairment persisted in October 2009.

The Department also argues that Howard did not produce evidence "that she could not return full-time and perform the essential functions of her job in September/October 2009." The Department does not argue that it presented evidence proving she could have returned to work full-time in that time period and perform the essential functions of her job, including transporting children. Until the Department presented evidence establishing that fact, Howard had no duty to present evidence. *See Garcia*, 372 S.W.3d at 637; *Rangel*, 184 S.W.3d at 382.

The Department also argues Howard failed to present evidence that the Department had notice of her disability. Notice of the disability is not an element of the prima facie case for disability discrimination under section 21.051(1). *See Davis*, 188 S.W.3d at 757 (setting out elements for prima-facie case of disability discrimination). In support of its argument, the Department cites to cases alleging discrimination for failure to accommodate a disability under the ADA, not workplace discrimination for having a disability under section 21.051(1). *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999); *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996); *Picard v. St. Tammany Parish Hosp.*, 611 F. Supp. 2d 608, 620 (E.D. La. 2009), *aff'd*, 423 F. App'x 467 (5th Cir. 2011). The Department also cites *Pulczinski v.*

*Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012), which concerned a claim under the ADA of denial of "equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." *Id.* at 1002 (quoting 42 U.S.C. § 12112(b)(4)). In that case, the plaintiff alleged his employer terminated him due to his son's disability. *Id.* at 1001. Both the statute and the factual situation in *Pulczinski* are distinguishable. The Department has not shown that notice to the employer of the disability is an essential element of a claim for disability discrimination under section 21.051.

We conclude the Department has not shown the trial court erred by denying the Department's plea to the jurisdiction concerning Howard's claim for disability discrimination under section 21.051.

**Reasonable Workplace Accommodation**

Howard alleged the Department failed to reasonably accommodate her disability because it refused to permit her to use her seventy-two hours of annual leave to work four hours per day for two or three weeks. Section 21.128 of the labor code provides that it is an unlawful employment practice for an employer to fail "to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability who is an employee . . . , unless the [employer] demonstrates that the accommodation would impose an undue hardship on the operation of the business of the [employer]." LAB. § 21.128(a). The elements of a claim for an employer's failure to accommodate a disability overlap the elements of a disability-discrimination claim. To prove failure to accommodate, the plaintiff must show (1) the plaintiff has a "disability," (2) the employer had notice of the disability, (3) the plaintiff

–10–

could perform the "essential functions" of the position with "reasonable accommodations," and (4) the employer refused to make such accommodations. *Davis*, 188 S.W.3d at 758.[5]

The Department argues that Howard's requested accommodation, use of her seventy-two hours of accrued annual leave while she worked part time, was not a reasonable accommodation as a matter of law because Howard could not perform the "essential functions" of the position with the accommodation. "Essential functions of a job are those that 'bear more than a marginal relationship to the job at issue.'" *LeBlanc v. Lamar State College*, 232 S.W.3d 294, 300 (Tex. App.—Beaumont 2007, no pet.) (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993)). Howard testified she wanted to use her annual leave to work part time while she weaned herself off certain medications, and she asked that she do only office work during that time. The medications Howard wanted additional time to wean herself from were those that made it unsafe for her to drive. The evidence showed that driving, including transporting children, constituted seventy-five percent of Howard's duties. Therefore, driving was "an essential function" of her position. *See Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1217 (10th Cir. 2012) (function making up twenty-five to fifty percent of position was essential function); *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 34 (1st Cir. 2011) (employee did not perform essential function of attendance at work when she was absent more than twenty percent of the time). Howard did not present evidence that driving was not an essential function of her position. Howard's working only four hours per day while doing office work would leave the essential function of driving unperformed. Accordingly, we conclude the Department conclusively

---

[5] Some courts have held the *McDonnell Douglas* burden-shifting test with its presumption of discrimination does not apply to a claim of failure to reasonably accommodate a disability. *See Davis v. City of Grapevine*, 188 S.W.3d 748, 758–59 (Tex. App.—Fort Worth 2006, pet. denied) (discussing *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283–84 (7th Cir. 1996) ("If it is true that [the employer] should have reasonably accommodated [the employee's] disability and did not, [the employer] has discriminated against him. There is no need for indirect proof or burden shifting.")). In that situation, *Garcia* would not apply. However, *Miranda* would apply, requiring the Department to present summary judgment evidence establishing the non-existence of jurisdictional facts before the plaintiff would be required to present evidence. *See Miranda*, 133 S.W.3d at 228; *see also Dallas County v. Logan*, 420 S.W.3d 412, 429 (Tex. App.—Dallas 2014, pet. filed) ("When a plea [to the jurisdiction] challenges the existence of jurisdictional facts, we take as true all evidence favorable to the claimant and indulge all reasonable inferences in his favor.").

disproved one of the elements of Howard's claim that the Department failed to accommodate her disability, the element that Howard could perform the essential functions of the position with the accommodation.

Howard argues the evidence raised a fact question regarding her reasonable accommodation claim because, she asserts, both her supervisor, Ogle, and the Department's regional director, Black, testified she could perform the essential functions of her job by working only four hours per day for two or three weeks. We disagree. Black and Ogle did not testify that Howard was able to drive or that she could perform the essential functions of her position. Black's testimony concerned whether Howard's job could be performed by Howard working only part time instead of full time, and Black said it could be performed part time, if the Department permitted part time work, which it did not. Black testified as follows:

> Q. Could the job be performed part-time?
>
> A. Because of the way our positions are given to us from the legislators, you know, it would have to be a split FT—full-time equivalent. It would have to be another person willing to say, Okay, if she wants to do it part-time, and I want to do it part-time. I mean we just don't have part-time-position within DFPS.
>
> Q. Okay.
>
> A. Does that make sense? We don't have—in my region, we don't. We don't. We don't have any part-time. We used to a long time ago, but we don't right now.
>
> Q. All right. So could Carlotta Howard have performed her job four hours a day?
>
> A. I guess she could have, yeah. But the necessity of the job—the function is a full-time equivalent position. So that's eight hours a day.
>
> Q. But she could have performed it four hours a day?
>
> A. But yeah. She could have performed it four hours a day. She could have if her doctor said so. I want to get that in.

(Objections omitted.) Ogle testified that she would have been able to operate the office with Howard working only four hours per day and that she would have permitted Howard to work part time if she had been instructed to do so by the regional office:

> Q. Would you have been able to run your unit if she was only able to work four hours a day?
>
> A. Absolutely. I would have run my unit regardless.
>
> Q. Okay. So you could have worked—so the first exhibit that we entered was a doctor's release—
>
> A. Uh-huh
>
> Q. –saying that she could work for four hours a day?
>
> A. Uh-huh.
>
> Q. And just so we're clear, you're saying that would have—you would have been able to do—that would have been fine?
>
> A. I would have done whatever I was instructed to do.
>
> Q. Okay. But she could have worked in your unit, and your unit could have operated that way?
>
> A. Any unit can operate that way. It's not our decision to make whether or not she's going to come back on light duty and what responsibilities she's going to have.
>
> Q. That's all Regional Office?
>
> A. Yes.

(Objection omitted.) In context, Ogle and Black's testimony is not evidence that working part time would have made Howard qualified to perform the essential function of driving. Nor did they testify that Howard could drive while taking the medicines or being subject to back spasms. Nor did they testify that driving was not an essential function of the position. Accordingly, their testimony did not raise a genuine issue of material fact of whether Howard could have performed the essential functions of her position with the accommodation of working only four hours per day.

Howard also cites to this statement by Black, "You know, if she would have said for the next month I need to come in for four hours, you know, a day, I would venture to say that I would have approved that." This testimony is not evidence that Howard could have fulfilled the essential functions of her position by working only four hours per day. Nor is it evidence that working only four hours per day would have left Howard able to perform the driving functions of her position while taking the medicines.

We conclude the Department established the trial court lacked jurisdiction over Howard's claim that the Department failed to accommodate her disability.[6]

**CONCLUSION**

We sustain the Department's issue on appeal in part and overrule it in part. We reverse the trial court's order denying the Department's plea to the jurisdiction as to Howard's claim that the Department failed to accommodate her disability, and we order that claim dismissed for want of jurisdiction. In all other respects, we affirm the trial court's order.

|  | /Lana Myers/ |
|---|---|
| 130817F.P05 | LANA MYERS |
|  | JUSTICE |

---

[6] The Department also argued the trial court lacked jurisdiction over Howard's reasonable accommodation claim other than her claim for the accommodation of working four hours per day because she did not exhaust her administrative remedies for those accommodations. Howard did exhaust her administrative remedy for working four hours per day, which was the only requested accommodation alleged in her petition.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TEXAS DEPARTMENT OF FAMILY
AND PROTECTIVE SERVICES, Appellant

No. 05-13-00817-CV     V.

CARLOTTA HOWARD, Appellee

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-13467-H.
Opinion delivered by Justice Myers.
Justices FitzGerald and Francis participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's order denying appellant Texas Department of Family & Protective Services' plea to the jurisdiction as to appellee Carlotta Howard's claim that appellant Texas Department of Family & Protective Services failed to accommodate her disability, and we **DISMISS** that claim for want of jurisdiction. In all other respects, we **AFFIRM** the trial court's order. We further **ORDER** that each party bear its own costs of this appeal.

Judgment entered this 15th day of April, 2014.

/Lana Myers/

LANA MYERS
JUSTICE