COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | § | No. 08-16-00317-CV |
| | § | Appeal from |
| Appellant, | § | County Court at Law No. 3 |
| v. | § | of El Paso County, Texas |
| BIBIANA FLORES, | § | (TC # 2015-DCV-0261) |
| Appellee. | § | |

## O P I N I O N

This is an accelerated interlocutory appeal from a trial court order denying the Texas Department of Criminal Justice's (TDCJ) plea to the jurisdiction. We affirm in part and reverse in part.

## FACTUAL SUMMARY

Bibiana Flores began working as a correctional officer for TDCJ in 2002. By 2008, she rose to the rank of sergeant and worked at the Rogelio Sanchez State Jail. She claims to have injured her back at work in 2011 by stepping awkwardly on a rock. She did not immediately report the incident, and lost no time from work, but by 2012, her back pain worsened. Flores claims to have later reported her back problems to two supervisors, Major Arturo Falcon and Captain Javier Aguilera, while asking for a shift change. She needed the shift change so that she could pursue

physical therapy for her back. The supervisors allegedly told her to wait, as everyone's schedule was about to change. TDCJ never altered her schedule.

On March 13, 2013, while at home on a day off, Flores slipped and fell, further injuring her back and leg. She went to see her regular physician, who referred her to a specialist, Dr. Gregory Misenheimer. He put Flores on a no-work status while she underwent physical therapy. Flores applied for, and the TDCJ granted her, leave under the Family Medical Leave Act (FMLA) because of that injury.

Also on March 13, 2013, TDCJ initiated an investigation of Flores that ultimately resulted in five disciplinary charges. Three of the charges relate to an inmate that TDCJ claims became too familiar with Flores. One charge contended that the prisoner blew Flores a kiss and she did not initiate a disciplinary charge. Another charge claimed that Flores tried to initiate a relationship with the same inmate by sharing personal information, including her marital status (single) and her phone number. Two other charges related to record-keeping entries on an ammunition log.

Under TDCJ's policy, an employee in most cases may respond to a charge prior to the imposition of disciplinary action. Because Flores was on FMLA leave, TDCJ was unable to get a response. The charges pended until she returned to work on August 28, 2013. As of that date, Dr. Misenheimer released her without restrictions. When she returned to work, Major Michael Thompson presented the charges to her, and while she disputed several of the charges, she resigned. Flores contends she was constructively discharged, having been told she could either resign or be fired.

Flores filed a charge of discrimination with the Texas Workforce Commission, and after obtaining a right to sue letter, she filed suit asserting three claims. She alleged that TDCJ: (1) refused to make reasonable accommodations to her work duties; (2) discriminated against her

2

based on a disability; and (3) retaliated against her for engaging in protected activity.  TDCJ filed an original and supplemental plea to the jurisdiction challenging each of the claims.  Flores non-suited the reasonable accommodations claim, and the trial court denied the plea as to the disability discrimination and retaliation claims.  This interlocutory appeal follows.

## PLEAS TO THE JURISDICTION UNDER THE LABOR CODE

Sovereign immunity protects state agencies from lawsuits unless the Legislature waives the immunity.  *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *Phillips v. Texas Dept. of Criminal Justice*, 366 S.W.3d 312, 315 (Tex.App.--El Paso 2012, no pet.)(deciding immunity questions in claim against TDCJ).  A governmental unit's sovereign immunity deprives a trial court of subject matter jurisdiction.  *Miranda*, 133 S.W.3d at 225-26; *Tirado v. City of El Paso*, 361 S.W.3d 191, 194 (Tex.App.--El Paso 2012, no pet.).  The Legislature has created a limited waiver of immunity for claims properly brought under the Labor Code.  *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012).  That waiver, however, extends only "for those suits where the plaintiff actually alleges a violation of the [Labor Code] by pleading facts that state a claim thereunder."  *Id*. at 636.[1]  Absent a pleading stating a prima facie case, the State's immunity from suit has not been waived.  *Id*.

A governmental entity may challenge the existence of that prima facie case through a plea to the jurisdiction.  *Miranda*, 133 S.W.3d at 225-26; *Bland Independent School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Univ. of Texas at El Paso v. Ochoa*, 410 S.W.3d 327, 330 (Tex.App.--El Paso 2013, pet. denied).  The plea might attack the face of the pleading, but it may

---

[1] Prior case law referred to these sections as the Texas Commission of Human Rights Act or TCHRA for short.  *Id.* Subsequent legislation abolished the Texas Commission on Human Rights and transferred its powers and duties to the Texas Workforce Commission Civil Rights Division.  *See* Act of June 18, 2003, 78th Leg., R.S., ch. 302, § 1, 2003 TEX.GEN.LAWS 1279 (codified at TEX.LABOR CODE ANN. § 21.0015 (West 2015)).

also include evidence that thereby places into issue the existence of a jurisdictional fact. *Miranda*, 133 S.W.3d at 226-27; *College of the Mainland v. Glover*, 436 S.W.3d 384, 391 (Tex.App.-- Houston [14th Dist.] 2014, pet. denied). Here, TDCJ has presented evidence in support of its plea to the jurisdiction.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 226. "If there is no question of fact as to the jurisdictional issue, the trial court must rule on the plea to the jurisdiction as a matter of law." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009). "If, however, the jurisdictional evidence creates a fact question, then the trial court cannot grant the plea to the jurisdiction, and the issue must be resolved by the fact finder." *Id.* "This standard mirrors our review of summary judgments" where the reviewing court takes as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *Id.*

While akin to a summary judgment, a plea to the jurisdiction is not a substitute for a "no evidence" motion for summary judgment. Instead, to trigger the plaintiff's obligation to submit some evidence creating a fact issue, the State entity must first present evidence conclusively negating one or more elements of the plaintiff's claim. *Miranda,* 133 S.W.3d at 226; *Texas Dept. of Fam. and Protective Services v. Howard*, 429 S.W.3d 782, 786 (Tex.App.--Dallas 2014, pet. denied). As the *Miranda* court explained, "[b]y requiring the [governmental entity] to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" *Miranda*, 133 S.W.3d at 228, *quoting Bland,* 34 S.W.3d at 554. But if there is no fact question on the jurisdictional issue, the trial court should rule on the plea to the jurisdiction as a matter of law. *Heinrich*, 284 S.W.3d at 378.

4

We review *de novo* the issue of whether a trial court has subject matter jurisdiction. *Miranda*, 133 S.W.3d at 226-27; *State Dept. of Highways and Public Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *Texas Dept. of Aging and Disability Services v. Lagunas*, 08-16-00086-CV, 2017 WL 728368, at *3-4 (Tex.App.--El Paso Feb. 24, 2017, no pet.).

## DISABILITY DISCRIMINATION

Flores alleges in part that TDCJ discriminated against her because of a disability. The Labor Code prohibits discrimination that occurs "because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." TEX.LAB.CODE ANN. § 21.105 (West 2015). A plaintiff may establish a disability discrimination case in one of two ways. The first requires the plaintiff to prove discrimination through direct evidence of what the defendant did or said. *Garcia*, 372 S.W.3d at 634. Because direct evidence of discriminatory motive is usually hard to come by, the Court created a second method: the burden-shifting mechanism described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that method, the plaintiff creates a presumption of discrimination if she meets the "minimal" initial burden of establishing a prima facie case of discrimination. *Garcia*, 372 S.W.3d at 634.

To establish a prima facie case of disability discrimination, a plaintiff must show that: (1) she has a "disability;" (2) she is "qualified" for the job; and (3) she suffered an adverse employment decision because of that disability. *Howard*, 429 S.W.3d at 787; *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex.App.--Fort Worth 2006, pet. denied), *citing Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1092 (5th Cir. 1996). Once the plaintiff makes that prima facie case, the burden shifts to the employer-defendant to articulate a legitimate non-discriminatory reason for its differential treatment of the employee. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824;

5

*Donaldson v. Texas Dept. of Aging and Disability Services*, 495 S.W.3d 421, 437 (Tex.App.--Houston [1st Dist.] 2016, pet. denied).

TDCJ limits its challenge *only* to whether Flores satisfied the first element--showing the existence of a disability. It contends that because Flores returned to work following her FMLA leave with a full work release from her doctor, she did not have a disability *at the time* of the adverse employment action. Conversely, Flores contends that TDCJ failed to meet its initial burden to conclusively show that she did not have a disability, and even if it did, there is some evidence in the record that creates a fact issue on that question. We ultimately agree with TDCJ that the trial court erred with regard to the disability discrimination claim, but for a somewhat different reason than TDCJ advances.

### *Definition of Disability*

A "disability" is (1) a "mental or physical impairment that substantially limits at least one major life activity of that individual," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." TEX.LAB.CODE ANN. § 21.002(6); *see also* 42 U.S.C.A. § 12102 (West 2013). A major life activity is defined to include, among other things, ". . . caring for oneself, performing manual tasks, . . . walking, standing, lifting, bending," and the "operation of a major bodily function[.]" TEX.LAB.CODE ANN. § 21.002 (11-a).

The Texas statutory scheme parallels the federal protections under the Americans with Disability Act (ADA). TEX.LAB.CODE ANN. § 21.001(3)(codifying the purposes of the Act, including execution of the policies embodied in federal employment discrimination legislation); *City of Houston v. Proler*, 437 S.W.3d 529, 532 n.7 (Tex. 2014)("In construing Texas law on [employment discrimination], we consider federal civil rights law as well as our own caselaw."). Effective January 1, 2009, Congress amended the ADA under what is referred to as the ADA

Amendment Act (ADAAA). *See* Pub. Law. No. 110-325, 122 Stat. 3353 (2008); *Proler*, 437 S.W.3d at 533 n.17. With the ADAAA, Congress intended to broaden the definition and coverage of the term "disability" and negate the more limited interpretation of "major life activity" from several prior judicial opinions. *See Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329 (4th Cir. 2014); *Neely v. PSEG Texas, Ltd. Partnership,* 735 F.3d 242, 245 (5th Cir. 2013); *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1110 (8th Cir. 2016), *cert. denied*, 137 S.Ct. 256 (2016); *Rohr v. Salt River Project Agricultural Imp. and Power Dist.*, 555 F.3d 850, 853 (9th Cir. 2009).

The Texas Legislature followed suit and amended the Texas Labor Code the same year. Relevant here, that amendment redefined disability to *include* "an impairment that is episodic or in remission that substantially limits a major life activity when active." Act of June 19, 2009, 81st Leg., R.S., ch. 337, § 2, 2009, TEX.GEN.LAWS 869 (codified at TEX.LABOR CODE ANN. § 21.0021(a)(2)(West 2015)). The Legislature also added the definition of a major life activity as we note above. *Id*. at § 1. The determination of whether an impairment substantially limits a major life activity must be made "without regard to the ameliorative effects of mitigating measures[.]" *Id*. at § 2 (codified at TEX.LABOR CODE ANN. § 21.0021(b)). As with the federal amendments under the ADAAA, the Legislature added a statement that the term disability shall be construed broadly in favor of coverage. *Id.* at § 2, (codified at TEX.LABOR CODE ANN. § 21.0021(a)(1)).

TDCJ argues that because Flores was not disabled when she left its employment on August 28, 2013, it has conclusively disproved the first element of her claim. TDCJ principally relies on our decision in *El Paso County v. Vasquez*, 508 S.W.3d 626 (Tex.App.--El Paso 2016, pet. denied) for the proposition that the worker must be disabled at the time of the adverse action. In *Vasquez*, a County employee suffered a heart attack and underwent quintuple bypass heart

7

surgery. 508 S.W.3d at 629. She also contracted tuberculosis while in the hospital, but fortunately, recovered from both the surgery and infection. *Id.* When she returned to work, the County placed her in a less desirable job, allegedly because the other employees feared contracting TB. *Id*. at 630. She was later discharged, and filed suit alleging discrimination based on: (1) her actual disability; (2) being "regarded as" disabled; and (3) retaliation for protected activity. *Id.* at 630-31. On review of the County's plea to the jurisdiction, we held that she presented sufficient evidence of being "regarded as" having a disability. *Id*. at 638.

We held her discrimination claim based on an actual disability failed, however, because she was not disabled at the time of her discharge. *Id*. at 639. The County challenged the actual discrimination claim on the basis of the pleadings alone, claiming that Vasquez's own pleading affirmatively alleged she was not actually disabled at the time she attempted to return to work. *Id*. Vasquez did not plead, and there was no evidence in the record to establish, that her TB was episodic or merely went into remission as contemplated by the 2009 amendment to the Labor Code.

In support of the proposition that a worker must be disabled at the time of the discriminatory act, we cited three federal cases, and the Dallas Court of Appeals opinion in *Texas Dept. of Fam. and Protective Services v. Howard*, 429 S.W.3d 782, 784 (Tex.App.--Dallas 2014, pet. denied). *Vasquez*, 508 S.W.3d at 639. The three federal cases all predate the ADAAA with its amendments allowing for episodic conditions, or those in remission.[2] *Howard* acknowledged

---

[2] In *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 618 (5th Cir. 2009), the court stated that under the ADA, "the relevant time for assessing the existence of a disability is the time of the adverse employment action." The court ultimately concluded that a worker with a chronic fatigue syndrome, who exhibited symptoms before, through and after her termination, validly stated a claim under the ADA. *Id.* at 618. In *Samuels v. Kansas City Missouri Sch. Dist.*, 437 F.3d 797, 802 (8th Cir. 2006), the worker's claim failed because her back and knee injuries were deemed temporary impairments with little or no long-term impacts, and were not disabilities. The Eighth Circuit relied on *Toyota Motor Manuf., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) which was one of the cases Congress intended to partially overturn with its adoption of the ADAAA. *See Morris*, 817 F.3d at 1110. We also cited *Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir. 2000), another pre-ADAAA case, that turned

8

the 2009 change in the definition of disability, but the case was ultimately decided on a failure of the employer's summary judgment proof. There, a governmental employee was involved in a traffic accident that caused injury to her spine, including some ligament sprains, bruises to the vertebra, and a herniated disc. 429 S.W.3d at 784. After the employee exhausted her available leave time, and after no arrangement could be made for part-time work, the governmental entity terminated the employee. *Id.* at 785. In response to the employee's lawsuit, the governmental entity filed a plea to the jurisdiction, claiming in part that the employee was not disabled because at the time of the termination, she was "significantly better," able to drive, and had an essentially normal range of motion. *Id.* at 788. However, the employee had testified to experiencing considerable pain and muscle spasm throughout that time. *Id.* The spasms and pain required the employee to take medications that in turn prevented the employee from driving or doing any lifting. *Id.* The court concluded that the defendant did not meet its initial burden to show the employee was not disabled, because it presented no evidence that the employee was not experiencing any of these problems on the date she was terminated. *Id.*

We indeed stated in *Vasquez* that in a disability discrimination claim "the relevant determination is whether the plaintiff was disabled at the time of the adverse employment action." 508 S.W.3d at 639. The requirement is a short-hand description of the causation requirement under the Labor Code. A worker who suffered a sprained ankle that fully recovered ten years prior to an adverse employment action would be hard pressed to claim disability discrimination because of the sprained ankle. The requirement does not mean, as TDCJ suggests, that the employee must be *symptomatic* at the precise time of the employment action. That view is inconsistent with the 2009 statutory amendments that allow for episodic conditions or diseases that go into remission. It

_____

on the employee's admission in a deposition denying any substantial limitations of a major life activity at the time of the complained-of employment actions.

9

would also engraft onto the statute an element not explicitly in the statutory text. A simple example explains the flaw in TDCJ's argument. If a worker has a badly arthritic ankle that becomes symptomatic only in cold weather, the worker always has a disability (assuming proof of impairment to a major life function), but one that is only episodically symptomatic. Certainly though, an employer could not freely discriminate against the worker in the warmer summer months when the ankle is not symptomatic. The 2009 addition of Section 21.0021(a)(2)(adding episodic conditions) forecloses that result.

*Application*

TDCJ met its initial burden to conclusively show that Flores was not disabled after she returned to work on August 28, 2013. It presented Dr. Miseheimer's June 27, 2013 medical record that diagnosed Flores with spondylolysis of the fifth lumbar vertebra and spondylolisthesis between L-5 and S-1. The same medical report predicted that with appropriate physical therapy, Flores would return to a pain free status and could return to "full and active duty at work." While on her FMLA leave in 2013, Flores received physical therapy as directed by the doctor. Consistent with his prediction, Dr. Misenheimer then released Flores to "regular/full duty" on August 28, 2013 and did not assign her any limitations or restrictions.

At that point, the burden shifted to Flores to present some evidence that she was disabled. She attempts to do so by claiming to have an underlying back condition that impairs a major life function on an episodic basis. While there is little doubt she produced evidence of having a permanent condition in her back, she stumbles on showing its episodic reoccurrence in way that impairs a major life function.

Viewed most favorably to Flores, an MRI shows her to have spondylolysis and spondylolisthesis in her lower back. No direct medical testimony explains what those terms mean,

10

but Flores testified that her doctor told her the discs in her lower back had deteriorated. She was told that the loss of discs was causing the nerves to be pinched. Flores testified that the condition started by at least 2011 when she hurt her back at work. By 2012, she claimed it had become a serious issue causing her constant shooting pain down one leg. Walking aggravated the pain. By the end of 2012, she experienced the pain on a daily basis, and for most of the day. In 2013, she took a five-month leave of absence because of pain in her back and leg. While on leave, she took medication to control the pain, but it caused her to be very drowsy. For a time, she was unable to drive herself. We would agree that there is some evidence that during at least part of the five month leave, and perhaps in 2012, her back limited a major life function.

The evidence does not show, however, that her condition is episodic, at least in the sense that it would continue to limit major life functions. Dr. Misenheimer told her that she had a "permanent condition" and that "throughout the years, it would get worse." Because her disc was "gone" her nerves were "constantly going to be in jeopardy." We view Flores's testimony as showing only that she would be more susceptible to re-injury, but not that she would have any sort of regular episodic reoccurrence of what she experienced in the summer of 2013:

> [TDCJ Attorney]: Did [Dr. Misenheimer] ever say that you would not be able -- that you would have a disability for the rest of your life?
>
> [Flores]: Yes, he did.
>
> [TDCJ Attorney]: What did he say?
>
> [Flores]: That that is a permanent condition, and throughout the years, it would get worse.
>
> [TDCJ Attorney]: And what's the permanent condition called?
>
> [Flores]: I do not know the name.
>
> [TDCJ Attorney]: And then what's your disability?
>
> [Flores]: Like I stated, my disk is gone. I totally have no disk, so my nerves are constantly going to be in jeopardy.
>
> [TDCJ Attorney]: In jeopardy of what?

11

[Flores]: Of getting injured or being affected in -- in any type of way.

[TDCJ Attorney]: And did the doctor tell you what activities would injure your nerves?

[Flores]: Not at that time, no.

Being in jeopardy of re-injury is not the same as an episodic condition. This testimony also falls short of providing insight to what sort of symptoms she might suffer in the future, or how those symptoms might impair a major life function. We have no dispute that a condition that produces episodic symptoms impairing a major life function is now contemplated as a disability under the Labor Code. However, nothing in Dr. Misenheimer's single medical report describes Flores as having such a condition. And nothing in her testimony reciting what she heard from Dr. Misenheimer raises a fact issue either.[3] We sustain Issue One.

## RETALIATION

Flores next contends that TDCJ retaliated against her for engaging in protected activity. *See* TEX.LAB.CODE ANN. § 21.055 (making actionable retaliation for an employee engaging in protected activities). To establish a prima facie case for retaliation, a plaintiff must show that: (1) she participated in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse employment action. *See Burger v. Central Apartment Mgmt., Inc.,* 168 F.3d 875, 878 (5th Cir. 1999)(Title VII); *Dias v. Goodman Mfg. Co.,* 214 S.W.3d 672, 676 (Tex.App.--Houston [14th Dist.] 2007, pet. denied)(Texas Labor Code). A protected activity includes: (1) opposing a

---

[3] We recognize, of course, that Flores's statements about what the physician told her are hearsay. Unobjected to hearsay, however, may serve as competent evidence. *See* TEX.R.EVID. 802 ("Inadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay."); *City of Keller v. Wilson*, 168 S.W.3d 802, 812 (Tex. 2005)("It has long been the rule in Texas that incompetent evidence is legally insufficient to support a judgment, even if admitted without objection."); *see also Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 374 (Tex.App.--Dallas 2011, no pet.)(holding that hearsay statement in affidavit filed in support of summary judgment is a defect in form that must be objected to at the trial). Our problem here is that the unobjected to hearsay statements are not enough to create a fact issue.

12

discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. TEX.LAB.CODE ANN. § 21.055.

Flores alleges that she approached her supervisors and asked for a shift change so she could obtain physical therapy for her back injury. Even assuming that request to be a protected activity, TDCJ advances three arguments attacking the retaliation claim: (1) she voluntarily resigned and was not fired; (2) there is no causal connection between any protected activity and her resignation; and (3) she cannot demonstrate the "but for" causation standard.

### *Resignation or Discharge?*

TDCJ first challenges whether it took any sort of adverse action against Flores, because she resigned. From its personnel file, TDCJ presented Flores's handwritten statement that she "voluntarily resigned" in lieu of a disciplinary action. But Flores presented sufficient evidence to raise a fact issue to whether she was constructively discharged.

"Constructive discharge serves as a legal substitute for the discharge element of a prima facie case of discrimination." *Passons v. University of Texas at Austin*, 969 S.W.2d 560, 562 (Tex.App.--Austin 1998, no pet.). That doctrine permits an employee who resigns, rather than being terminated, to satisfy the discharge requirement of a discriminatory discharge claim. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010)("A constructive discharge qualifies as an adverse personnel action under the [Labor Code] . . . ."). The ultimate test for a constructive discharge is whether the "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141, 130, 124 S.Ct. 2342, 2345, 159 L.Ed.2d 204 (2004). Courts consider a number of employer actions, such as demotion, or a reduction in salary or job

13

responsibilities, in deciding if the work conditions meet that standard. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 481 (5th Cir. 2008).

Evidence that an employee was forced to choose between resigning or being fired may also be sufficient to raise a fact issue regarding constructive discharge. *Gardner v. Abbott*, 414 S.W.3d 369, 383 (Tex.App.--Austin 2013, no pet.); *Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 338-39 (5th Cir. 2014). In these so-called "ultimatum" cases, courts require something beyond the employee's subjective belief that termination was inevitable. *See Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir.1997)(standard met when supervisor told employee he should find another job, and that he had one week before he would be placed on indefinite unpaid leave); *Davis v. City of Grapevine*, 188 S.W.3d 748, 766 (Tex.App.--Fort Worth 2006, pet. denied)(standard met when manager informed employee that "it would be in his best interest if he decided to resign rather than be terminated because future employers may ask the City whether Davis resigned or was terminated").

Under the ultimatum line of cases, Flores has created a fact issue on constructive discharge. Upon her return from leave, Major Thompson went over the disciplinary charges. Flores asked for assistance such as through the union, but was told they needed to proceed immediately. According to Flores, Major Thompson "told me that I either resigned or I was going to get fired for having all these disciplinaries." "I was basically told either resign, because it was better for me, or get fired."

TDCJ focuses on its right to discipline its employees, arguing that the mere presentation of a charge in a step-discipline process, like ordinary workplace criticism, would not cause a reasonable person to resign. *See Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 9 (Tex.App.--Tyler 2000, pet. denied)("Thus, we conclude that Hansen's imposition of step one was not

14

evidence of constructive discharge."). Flores' proof, however, goes beyond the mere presentation of disciplinary charges. She contests some of the underlying charges. She presented testimony from the former warden of her jail, Joel Barbosa, that the presentation of the five charges was not in accord with TDCJ's policy. Rather, under the step-disciplinary scheme, TDCJ would ordinarily present a single disciplinary charge that might include several "instances," some of which then might be dismissed on ultimate hearing of the matter. And most importantly, she claims that Major Thompson went outside the ordinary disciplinary process by giving her the choice between resignation or termination well before any hearing of the facts of the charges. She has raised at least a fact issue for constructive discharge.

### *Causation*

TDCJ's second and third arguments challenge the causation element necessary for a retaliation claim. An employee must establish that absent her protected activity, the materially adverse employment action would not have occurred when it did. *See Gumpert v. ABF Freight Sys., Inc.*, 293 S.W.3d 256, 262 (Tex.App.--Dallas 2009, pet. denied); *McMillon v. Texas Dept. of Ins.*, 963 S.W.2d 935, 940 (Tex.App.--Austin 1998, no pet.). In other words, a plaintiff must prove that she would not have suffered an adverse employment action "but for" engaging in the protected activity. *Navy v. College of the Mainland*, 407 S.W.3d 893, 901 (Tex.App.--Houston [14th Dist.] 2013, no pet.); *see also University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013)(discussing causation requirement for retaliation claim brought under Title VII). However, the employee "need not establish that the protected activity was the sole cause of the employment action." *Donaldson v. Texas Dept. of Aging and Disability Services*, 495 S.W.3d 421, 441-42 (Tex.App.--Houston. [1st Dist.] 2016, pet denied); *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 377 (Tex.App.--Fort Worth 2006, no pet.).

Evidence sufficient to establish a causal link between an adverse employment decision and a protected activity may include: (1) the employer's failure to follow its usual policy and procedures in carrying out the challenged employment actions; (2) discriminatory treatment in comparison to similarly situated employees; (3) knowledge of the discrimination charge by those making the adverse employment decision; (4) evidence that the stated reason for the adverse employment decision was false; and (5) the temporal proximity between the employee's conduct and the discharge. *Crutcher v. Dallas Independent School Dist.*, 410 S.W.3d 487, 494 (Tex.App.--Dallas 2013, no pet.), *citing Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 519 (Tex.App.--Houston [1st Dist.] 2006, pet. denied)(discussing factors in context of termination of employment).

## Time Proximity

TDCJ contends that the five-month gap between any protected activity and the date of resignation forecloses any showing of a causal connection between the two. The latest date of any protected activity was March 13, 2013, the date Flores obtained FMLA leave. The alleged constructive discharge occurred on August 28, 2013. Does the resulting five-month time gap belie any proof of causation? Given the facts before us, we reject the argument that the time gap was too long.

Retaliation claims are often provable only through circumstantial evidence that includes the temporal proximity between the protected activity and the alleged retaliatory action. *Univ. of Texas at El Paso v. Esparza*, 510 S.W.3d 147, 159-60 (Tex.App.--El Paso 2016, no pet.). While temporal proximity may indeed raise an inference of retaliation, the events must be very close in time. *Cf. Texas Dept. of State Health Services v. Rockwood*, 468 S.W.3d 147, 157-58 (Tex.App.--San Antonio 2015, no pet.)("we hold this temporal proximity of approximately one

16

month to be sufficient to raise a fact issue on the causation element of Rockwood's retaliatory discharge claim"); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)(five-day span between giving testimony and adverse employment action sufficient for prima facie case), *with Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that actions taken after twenty months "suggests, by itself, no causality at all"); *Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 65 (Tex.App.--Houston [14th Dist.] 1998, no pet.)(holding that a two and one-half year gap, "with nothing more, is too long to establish that there was a causal connection"); *Crutcher*, 410 S.W.3d at 496-97 (five-year time gap failed to support causal connection); *see also Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 529 (Tex.App.--Houston [1st Dist.] 2000, pet. denied)(noting proximity may establish causal connection when protected activity and adverse employment action are separated by weeks, as opposed to months and years).

"But it also is true that there is no hard-and-fast rule that any specified amount of time is too removed for an inference of causation. Especially where a defendant retaliates at the first opportunity that is presented, a plaintiff will not be foreclosed from making out a prima facie case despite a substantial gap in time." *Pardo-Kronemann v. Jackson*, 541 F.Supp.2d 210, 218 (D.D.C. 2008), *aff'd in part, rev'd in part on other grounds,* 601 F.3d 599 (D.C.Cir. 2010); *see also San Antonio Water System v. Nicholas*, 441 S.W.3d 382, 392 (Tex.App.--San Antonio 2013), *rev'd on other grounds*, 461 S.W.3d 131 (Tex. 2015); *Alamo v. Bliss*, 864 F.3d 541, 556 (7th Cir. 2017) (delay in retaliatory action explained by employees absence due to medical leave); *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2nd Cir. 2013)(four-month time gap sufficient to create fact issue particularly when the adverse action occurred at the first opportunity to retaliate).

Flores relies on this "first opportunity" precept, arguing that TDCJ retaliated against her at its first chance when she returned from FMLA leave. The disciplinary charges arose out of an investigation begun on March 13 and 15, 2013. Because Flores was on leave from March 13, 2013 to August 28, 2013, TDCJ did not have her responses to the charges, which are part of its disciplinary process. Her return date on August 28 was therefore the first opportunity that the TDCJ had to vet the charges and act upon them. Flores contends that immediately upon her return, TDCJ used the charges to compel her resignation because she had exercised her rights under the Labor Code. This circumstance might explain the five-month time gap, and thus she raises a fact issue on causation vis-à-vis any temporal proximity.

### "But For" Causation

In a somewhat related argument, TDCJ also argues that Flore cannot meet her burden to prove "but for" causation. The gist of the argument is that TDCJ claims to have shown with "indisputable documentary evidence" one of the disciplinary charges against her would have led to a termination. That charge related to Flores attempting to establish a relationship with an offender. TDCJ claims she revealed her marital status and phone number to the offender. The investigation report included a statement from the offender confirming that Flores initiated the contact, and that she provided her telephone number and marital status to him. The report also contains the statements from several other detention officers who witnessed Flores and the offender conversing at unexpected times or places. One officer stated that both were "laughing and smiling."

Yet our record also contains Flores' denial that she gave the offender her phone number or marital status. She claims she conversed with the offender, but only on matters germane to the unit. She also offered the affidavit of the former warden who states that inmates sometimes make

18

up offenses against officers to gain concessions. Because of that, TDCJ "always treats an inmate's version of events with a great deal of skepticism" when a dispute comes down the officer's word against the inmate.

Moreover, disciplinary charges brought by TDCJ against its employees are classified by their seriousness on a scale of one (most serious) to four (least serious). In the most serious offense, TDCJ charged Flores with initiating a relationship with a detainee, which is categorized as a Level 2 offense. The first offense of a Level 2 charge can result in anything from probation to termination. For termination, however, the "reprimanding authority" needed to submit "sufficient reason and documentation justifying the recommendation." TDCJ has presented nothing containing that recommendation. Indeed, TDCJ presented no conclusive evidence that it intended to terminate Flores. Instead, it claimed she resigned before the disciplinary process took its course. We cannot say that the record conclusively shows that Flores would have been terminated in any event. And without some conclusive evidence negating causation, Flores carried no burden to come forward with affirmative evidence establishing causation. Issue Two is overruled.

Having sustained Issue One, we reverse the plea to the jurisdiction in part and render judgment dismissing the disability discrimination claim under Section 21.105. Having overruled Issue Two, we affirm the order denying the plea to the jurisdiction with respect to the retaliation claim.


June 22, 2018
                                        ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

19