**AFFIRMED and Opinion Filed April 5, 2023**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-21-00379-CV**

**DALLAS COUNTY HOSPITAL DISTRICT D/B/A PARKLAND HEALTH AND HOSPITAL SYSTEM, Appellant**

**V.**

**SHERI KOWALSKI, Appellee**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-19-03723-E**

## MEMORANDUM OPINION

Before Justices Smith, Miskel, and Kennedy[1]
Opinion by Justice Smith

Appellant Dallas County Hospital District d/b/a Parkland Health and Hospital System (Parkland) brings this interlocutory appeal[2] challenging the trial court's denial of its plea to the jurisdiction. Because appellee Sheri Kowalski presented

---

[1] Justices Leslie Osborne and David Schenck were originally members of this panel and participated in oral argument; however, they did not participate in the issuance of this opinion. Justice Emily Miskel succeeded Justice Osborne after her resignation from the Court, and Justice Nancy Kennedy succeeded Justice Schenck after his term expired. Justices Miskel and Kennedy have reviewed the briefs and the record before the Court.

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

evidence to raise a genuine issue of material fact as to each challenged element of her claims for disability discrimination and retaliation,[3] we affirm.

## Background

Kowalski was employed by Parkland as the Director of Finance from January 12, 2016, through February 18, 2018. On December 20, 2017, she requested a keyboard tray, mouse tray, and for her monitors to be lowered to help alleviate neck and back pain. Her direct supervisor, Christine Putz, who was the interim Senior Vice President (SVP) of Finance, approved the request but then forwarded it to the Director of Talent Acquisition in the Office of Talent Management (OTM), which was Parkland's human resource department. In her email, Putz asked whether OTM and Occupational Health needed to be involved and noted that Kowalski had "pre-existing back and neck issues . . . so there isn't any question down the road." From there, Occupational Health and Employee Relations were brought in, as well as CareWorks, Parkland's third-party leave management administrator that processed reasonable accommodation requests pursuant to the American with Disabilities Act (ADA) and the ADA Amendments Act of 2008 (ADAAA).

Despite the workspace request already being approved by Putz, the Director of Employee Relations characterized the request as a "reasonable accommodation

---

[3] Although Parkland's brief on appeal also addresses claims for failure to accommodate and for a pattern and practice of discrimination, as did its plea to the jurisdiction, Kowalski has not treated either as a stand-alone claim. After reviewing the record and the briefs, we find the only claims before us are Kowalski's claims for disability discrimination and retaliation and, thus, limit our review to those claims.

–2–

complaint," and Kowalski was ultimately required to have a physician fill out an ADA accommodation request assessment form and return it to CareWorks. Kowalski tried to explain that she was not making an accommodation complaint based on a disability and that her issues were not pre-existing but was advised that, in order to receive her request, she was required to go through the accommodation process. Kowalski returned the ADA form to CareWorks on January 16.

On January 17, 2018, a nurse from Occupational Health emailed Kowalski a Computer Workstation Ergonomic Self-Evaluation form and scheduled an ergonomic appointment and evaluation for the afternoon of January 19. Occupational Health completed the evaluation and, a few minutes later, Putz escorted Kowalski to OTM where she was notified that her position had been eliminated due to a restructuring of the finance department. She was asked to pack her things and was escorted out of the building. In a letter dated January 19, Kowalski was notified that she could apply for any open position for which she was qualified, including a newly created Controller position. She was also offered a severance package that would be available when her employment officially ended on February 18. Kowalski did not sign and return the release agreement or apply for the Controller position.

On March 13, 2018, Kowalski filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that Parkland discriminated and retaliated against her because she requested a keyboard tray and Parkland treated it

–3–

as a complaint and then terminated her. She then brought suit against Parkland alleging that it violated the Texas Labor Code by discharging her and discriminating against her because of disability. She also alleged that Parkland retaliated against her and had a pattern and practice of disability discrimination.

Parkland filed a combined plea to the jurisdiction and traditional and no-evidence motion for summary judgment arguing that it was immune from liability because Kowalski could not establish the prima facie elements of her claims and Parkland's evidence conclusively negated the claims. Kowalski responded and, after a hearing, the trial court denied Parkland's plea and motions for summary judgment. Parkland timely pursued this appeal and raises two issues for our review: (1) whether the trial court erred in overruling Parkland's objections to Kowalski's inadmissible summary judgment evidence and considering that evidence in ruling on Parkland's plea; and (2) whether the trial court erred in denying Parkland's plea to the jurisdiction.

**Pleas to the Jurisdiction and Governmental Immunity**

To invoke the trial court's subject-matter jurisdiction, the plaintiff must allege facts that affirmatively demonstrate the court has jurisdiction to hear the case. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A plea to the jurisdiction is an appropriate procedural vehicle by which a party may challenge a trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999).

–4–

When a plea to the jurisdiction challenges the existence of jurisdictional facts, such as here, the court considers the evidence submitted when resolving the jurisdictional issue. *Miranda*, 133 S.W.3d at 227. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28. However, if the evidence related to the jurisdictional issue is undisputed or fails to raise a fact question as to jurisdiction, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

We review a trial court's ruling on a plea to the jurisdiction *de novo*. *Id.* As with the summary judgment standard of review, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovants favor. *Id.* However, we cannot disregard evidence necessary to show context or disregard unfavorable evidence if reasonable jurors could not disregard it. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771, 793 (Tex. 2018). To create a fact question, the nonmovant must present more than a scintilla of probative evidence on each challenged jurisdictional fact. *See* TEX. R. CIV. P. 166a(c) (setting out procedure for traditional summary judgment motions and requiring nonmovant to present evidence raising a genuine issue of material fact if movant establishes it is entitled to judgment as a matter of law); *Miranda*, 133 S.W.3d at 227–28 (explaining standard for reviewing challenge to the existence of jurisdictional facts mirrors that of reviewing a traditional summary

–5–

judgment motion; thus, plaintiff must show there is a "disputed material fact regarding the jurisdictional issue"); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) ("A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced."). More than a scintilla of evidence exists when the evidence allows reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharm. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

Sovereign immunity deprives a trial court of subject-matter jurisdiction over suits against the State and certain governmental units unless the governmental unit has consented to suit or immunity has been waived, such as under the Texas Labor Code. TEX. LAB. CODE ANN. § 21.254 (providing complainant may bring a civil action for violation of code after exhausting certain administrative requirements); *Alamo Heights*, 544 S.W.3d at 763, 770 ("The TCHRA waives immunity, but only when the plaintiff states a claim for conduct that actually violates the statute.").[4] The Texas Labor Code prohibits employers, including public hospital districts, from discriminating against protected employees or retaliating against employees who engage in protected activities. TEX. LAB. CODE §§ 21.002(8)(D) (defining "[e]mployer" to include a "state instrumentality"), 21.051 (prohibiting

---

[4] Case law continues to refer to violations of the Texas Labor Code as violations of the Texas Commission on Human Rights Act or TCHRA for short. *Tex. Dep't of Crim. Just. v. Flores*, 555 S.W.3d 656, 661 n.1 (Tex. App.—El Paso 2018, no pet.). However, the legislature abolished the Texas Commission on Human Rights and transferred its powers and duties to the Texas Workforce Commission Civil Rights Division in 2003. TEX. LAB. CODE § 21.0015; *Flores*, 555 S.W.3d at 661 n.1.

discrimination), 21.055 (prohibiting retaliation); *Holloway v. Dall. Cnty. Hosp. Dist.*, No. 05-20-01114-CV, 2022 WL 17883799, at *10 n.5 (Tex. App.—Dallas Dec. 23, 2022, no pet.) (mem. op.) ("Public hospital districts like Parkland are state instrumentalities and subject to claims under the Texas Labor Code.").  Because one of the purposes of the Texas Labor Code is to execute the policies of the ADA and its amendments, we consider federal cases as well as Texas cases when deciding employment discrimination issues.  TEX. LAB. CODE § 21.001(3); *City of Hous. v. Proler*, 437 S.W.3d 529, 532 (Tex. 2014).

### Parkland's Objections to Kowalski's Evidence

Before we reach the question of whether the trial court erred in denying Parkland's plea as to Kowalski's claims for disability discrimination and retaliation, we must decide Parkland's first issue in which it argues that the trial court erred in overruling its objections to Kowalski's inadmissible evidence and considering such evidence when it denied the plea.  Parkland specifically challenges the trial court's ruling as to twenty-five paragraphs of Kowalski's fifty-eight paragraph declaration. Parkland includes a chart in its brief, which provides the language of each paragraph and the grounds for objection below.  On appeal, Parkland argues that Kowalski's declaration is self-serving, conflicts with her deposition testimony, and contains conclusory statements.  However, with the exception of one paragraph, Parkland does not explain how the trial court erred or how the law should have been applied.

We review a trial court's evidentiary rulings, even in a summary judgment proceeding, for an abuse of discretion. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam); *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.); *see also Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163 (Tex. 2018) (per curiam) ("The same evidentiary standards that apply in trials also control the admissibility of evidence in summary-judgment proceedings."). A trial court abuses its discretion when it acts arbitrarily or without regard to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Summary judgment affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f).

We take Parkland's general challenge to the twenty-five paragraphs to raise an issue as to whether each paragraph was conclusory. "A conclusory statement is one that does not provide the underlying facts to support the statement." *Holloway*, 380 S.W.3d at 323. "Conclusions in an affidavit are insufficient either to support summary judgment or to raise a fact issue in response to a summary-judgment motion." *Id.* However, as Parkland acknowledges, Kowalski also testified by deposition, and the trial court included the following language in its order on Parkland's objections:

By overruling an objection made by Parkland, the Court is not thereby finding that it was necessary to rely upon all of the evidence presented in order to deny the plea to the jurisdiction and motion for summary judgment. Plaintiff Sheri Kowalski provided more than sufficient evidence for the Court to deny Parkland's plea to the jurisdiction and motion for summary judgment.

Additionally, to the extent a statement standing alone might be inadmissible as conclusory or an opinion, it may nevertheless be considered in context when based upon specific facts upon which the statement may be predicated.

Even if we concluded the trial court erred in overruling Parkland's conclusory objections, we would not reverse the trial court's order denying Parkland's plea to the jurisdiction on the basis of the evidentiary rulings unless they "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1). In our review of Kowalski's evidence, we did not rely upon these twenty-five challenged paragraphs to conclude that Kowalski raised a genuine issue of material fact as to each of her claims against Parkland. Therefore, because this evidence is unnecessary to support the trial court's ruling, any error in overruling Parkland's conclusory objections could not have resulted in an improper judgment. *See Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) (error in excluding evidence that is not controlling on material issue dispositive to the case is not reversible error).

Parkland also argues that the trial court erred in overruling Parkland's hearsay objection[5] to paragraph 44, which provides:

> When I began reporting the discriminatory treatment to Parkland, Yolanda Rich, Vice President of Compliance at Parkland, told me I was being retaliated against and not to report the discriminatory treatment to Parkland's human resource department, because reporting complaints to HR only makes it worse. Ms. Rich's statement related directly to my disability or request for accommodation; it was close in time to the adverse employment action of unreasonably escalating the matter and treating me differently than others who made the request; she has authority over compliance at Parkland; and the statement related to the adverse employment action.

Parkland contends that Rich's statement does not qualify as an opposing party statement because, even if Rich made the statement, it was not made on behalf of Parkland and was not made on a matter within the scope of Rich's employment with Parkland. We disagree.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is generally not admissible. TEX. R. EVID. 801(d), 802. However, a statement offered against the opposing party that was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay. TEX. R. EVID. 801(e)(2)(D). In deciding whether the exclusion applied to evidence presented by an employee in response to a county's plea to the jurisdiction on her discrimination claim, the El Paso Court explained: "[S]tatements,

_____

[5] Parkland does not challenge the trial court's ruling as to its objections that the paragraph calls for a legal conclusion, lacks foundation, and is misleading.

–10–

such as those by the County's human resources personnel and by [the employee's] supervisors, were made by agents or employees of the County on matters within the scope of that relationship and while the relationship existed.  By rule, they do not fall within the definition of hearsay." *Cnty. of El Paso v. Aguilar*, 600 S.W.3d 62, 79 (Tex. App.—El Paso 2020, no pet.).

Here, Parkland's highest officer in its HR department (the Executive VP of OTM) testified in his deposition that telling a compliance officer was one of the multiple ways an employee could report discrimination and launch an investigation. Thus, the record demonstrates that comments by the Vice President of Compliance regarding discriminatory or retaliatory practices were made within the scope of her employment with Parkland.  Whether Rich made the statement on behalf of Parkland or had the authority to make such a statement to Kowalski "might bear on the significance of the statements alleged," but it is "not wholly inadmissible as hearsay." *Hawxhurst v. Austin's Boat Tours*, No. 08-19-00257-CV, 2020 WL 5094673, at *3 (Tex. App.—El Paso Aug. 28, 2020, no pet.) (mem. op.).  Therefore, the trial court did not abuse its discretion by overruling Parkland's objection to paragraph 44 of Kowalski's declaration.  Furthermore, Kowalski testified in her deposition without objection that she talked to Rich about the situation and Rich believed, based on everything Kowalski told her, that Parkland had retaliated against Kowalski.  Rich also cautioned her that, based on what she had seen at Parkland, reporting anything to human resources only made things worse.  Thus, even if we

disregarded this paragraph of Kowalski's declaration, she generally testified to the same information in her deposition.

Finally, to the extent that Parkland challenges the trial court's rulings on Parkland's objections to Michael Ballew's declaration, the issue is inadequately briefed, and we decline to address it on appeal. Parkland asserts that Ballew's declaration is conclusory twice in its brief but offers no legal argument as to why or as to which paragraphs of Ballew's declaration its argument applies. In its reply brief, Parkland implies that Ballew's declaration does not amount to competent evidence and states it "stands on its objections to Michael Ballew's declaration" but again does not set out what those objections were below or offer any legal argument as to why the trial court abused its discretion in overruling the objections. Without proper citations to the record or any legal analysis, we are left with nothing to review. *Olsen v. Comm'n for Law. Discipline*, 347 S.W.3d 876, 884 (Tex. App.—Dallas 2011, pet. denied).

In sum, we cannot conclude that the trial court committed reversible error by overruling Parkland's objections to Kowalski's evidence. Parkland's first issue is overruled.

### Kowalski's Claim for Disability Discrimination

The Texas Labor Code prohibits an employer from discharging or otherwise discriminating against an employee because of the employee's "race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code § 21.051. Because

–12–

direct evidence of discrimination is rare, claims often proceed on indirect or circumstantial evidence. *Alamo Heights*, 544 S.W.3d at 782. All elements of a circumstantial-evidence discrimination claim are jurisdictional facts for which the employee must raise a genuine issue of material fact in order to defeat the governmental employer's plea to the jurisdiction. *Id.* at 783–85. When evaluating whether the employee has established discrimination based on circumstantial evidence, Texas courts follow the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 782. The Texas Supreme Court has explained the three-part framework as follows:

> If the employee can establish a prima facie case of discrimination, a rebuttable presumption of discrimination arises, which can alone sustain a discrimination claim. But the employer can defeat this presumption merely by producing evidence of a legitimate, nondiscriminatory reason for the disputed employment action. Once rebutted, the presumption disappears, and an employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination. In both direct- and circumstantial-evidence cases, the burden of persuasion remains at all times with the employee.

*Id.* (internal footnotes and citations omitted).

To establish a prima facie case of disability discrimination, a plaintiff must show (1) she has a disability; (2) she is qualified for the position; and (3) she suffered an adverse employment decision because of her disability. *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 61 (Tex. 2021). "Disability" is defined as "a mental or physical impairment that substantially limits at least one major life activity of that

–13–

individual, a record of such an impairment, or being regarded as having such an impairment."  TEX. LAB. CODE § 21.002(6).

> "Major life activity" includes, but is not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.  The term also includes the operation of a major bodily function, including, but not limited to, functions of the immune system, normal cell growth, and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

*Id.* § 21.002(11-a).  The Texas Legislature amended the Texas Labor Code in 2009 to align with the ADAAA passed by Congress in 2008.  *Flores*, 555 S.W.3d at 663. As such, the code now instructs that the term "disability" "shall be construed in favor of broad coverage of individuals."  TEX. LAB. CODE § 21.0021(a)(1).  The definition of "regarded as having such an impairment" was also added and makes clear that an impairment is not restricted to one that limits major life activities:

> "Regarded as having such an impairment" means subjected to an action prohibited under Subchapter B [Unlawful Employment Practices] or C [Application; Exceptions] because of an actual or perceived physical or mental impairment, other than an impairment that is minor and is expected to last or actually lasts less than six months, regardless of whether the impairment limits or is perceived to limit a major life activity.

TEX. LAB. CODE § 21.002(12-a) (internal footnote and citation omitted); *see also Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 446–47 (5th Cir. Jan. 18, 2018) (unpublished opinion) (explaining how Congress amended ADA to broaden its protections and that amended regarded-as definition, which is substantively the

–14–

same as the new definition in the Texas Labor Code, does not require a plaintiff to show that the actual or perceived impairment limits a major life activity); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015) (ADAAA overruled prior authority requiring plaintiff to show employer regarded her as being substantially limited in a major life activity).

Parkland argues that there is no evidence from which a reasonable and fair-minded jury could conclude that Kowalski was disabled because she admitted she did not consider herself as being disabled until she spoke with her attorneys who changed her understanding of the meaning of disability, she presented no evidence that she had a substantially limiting impairment, and she presented no evidence that an impairment limited a major life activity. Parkland also argues that there is no evidence of any record of a disability because the only medical evidence in the record is from Kowalski's chiropractor who determined that Kowalski was not disabled. Lastly, Parkland contends that it could not have regarded her as disabled because she repeatedly told Parkland that she was not disabled and was not making an ADA complaint or request for an accommodation under the ADA or ADAAA.

The cases Parkland relies on to support its argument that it conclusively established Kowalski did not have a disability are all pre-2009 cases. As to the "regarded-as" section of the disability definition, Parkland mistakenly argues that Kowalski had to raise evidence showing that Parkland "regarded her to be suffering from an impairment within the meaning of the TCHRA such that it substantially

limited one or more major life activities" even though the definition of "regarded as having such an impairment" expressly states "regardless of whether the impairment limits or is perceived to limit a major life activity." TEX. LAB. CODE § 21.002(12-a). Thus, Parkland relied on a standard that the amendments expressly rejected in arguing that Kowalski did not have a disability. *See Williams*, 717 F. App'x at 447; *Burton*, 798 F.3d at 230. As such, we disagree that Parkland conclusively negated the disability element or that Kowalski failed to raise a fact question as to whether she had a disability under the amended statute.

The evidence shows that, when Kowalski requested a keyboard and mouse tray, she was rerouted to OTM, Occupational Health, and CareWorks to file a formal accommodation request and follow Parkland's policies for reasonable accommodations under the ADA and ADAAA, including participating in an ongoing dialogue with the appropriate Parkland representatives to determine a reasonable accommodation and providing medical documentation supporting the accommodation. Thus, there is evidence that Parkland regarded her as having an impairment and directed her to follow Parkland's ADA policies in order to receive an accommodation for her impairment.

Furthermore, despite the fact that Kowalski's chiropractor indicated that Kowalski did not have a physical or mental impairment as recognized under the ADA, had no limitation on major life activities, and had no limitation in her ability to perform the essential functions of her job, her chiropractor also indicated that

–16–

Kowalski needed a permanent ergonomic/equipment accommodation to reduce neck and upper back strain so that Kowalski could work more comfortably. Kowalski testified at her deposition that her constant neck and back pain was a physical impairment that limited her ability to drive and type at a computer all day (work) without pain. Moreover, after CareWorks received Kowalski's accommodation paperwork, a nurse who processed Parkland's ADAAA requests responded to Kowalski (although by that time Kowalski's position had already been eliminated) and told her that, according to her paperwork, "[i]t appears you do have a condition that affects major life activities so the answer would be 'yes' you have an impairment, and the diagnosis would be neck and upper back strain." CareWorks also emailed Kowalski's chiropractor explaining that in order to get the accommodation, she would need to check "yes" that Kowalski does have an impairment and include her diagnosis and treatment on the form.

Therefore, we conclude that Kowalski presented more than a scintilla of evidence that she had a disability as defined under the Texas Labor Code.

Parkland does not challenge whether Kowalski was qualified for her position as Director of Finance or that its elimination of Kowalski's position amounts to a material adverse employment action. *See Alamo Heights*, 544 S.W.3d at 788–89 ("Termination is unquestionably a materially adverse employment action."). Parkland does, however, argue that Kowalski failed to establish that her position was eliminated because of her disability.

To establish this causal nexus a plaintiff is not required to provide evidence that she was replaced by a non-disabled person or was treated less favorably than non-disabled employees, although those are ways an employee can show discrimination. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 695–97 (5th Cir. 2014); *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 792–94 (7th Cir. 1997). She simply must show that she was terminated *because* of her disability. *LHC Grp.*, 773 F.3d at 696. Under the burden-shifting framework of *McDonnell Douglas*, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Thus, for purposes of this opinion, we will determine whether Kowalski satisfied her ultimate burden to present some evidence she was eliminated "because of" her disability under the third step in the *McDonnell Douglas* framework instead of performing a separate analysis here. *See Leffel*, 113 F.3d at 793–94 (setting out the causation element as requiring proof that the circumstances surrounding the employee's discharge "indicate that it is more likely than not that her disability was the reason for [the] adverse actions" and explaining that "the nature of the proof giving rise to the requisite inference of discrimination cannot be reduced to a formula that will serve any and all discrimination cases").

Under the second step of the *McDonnell Douglas* framework, we look to whether the employer defeated the presumption of discrimination by coming forward with a legitimate, nondiscriminatory reason for the adverse employment

action.  *Alamo Heights*, 544 S.W.3d at 782.  It is undisputed that Parkland produced evidence of a legitimate, nondiscriminatory reason for the adverse action through its Chief Financial Officer's testimony that he created the new Controller position and eliminated Kowalski's position to reduce redundancy in job duties and increase efficiency in the finance department.  Therefore, we turn to the third step in the *McDonnell Douglas* framework.

Under the third step, Kowalski was required to present evidence that Parkland's stated reason for eliminating her position was false and a pretext for discrimination.  *Id.* at 782–84.  To do so, Kowalski's evidence must raise a fact issue on the issue of discriminatory intent.  *Id.* at 783, 785.  This Court has explained that "[t]o demonstrate the employer's articulated reason for the adverse employment action was pretextual and discrimination was the real cause . . . , a plaintiff only need 'show that discrimination was a motivating factor' in the adverse employment action."  *City of Dall. v. Siaw-Afriyie*, No. 05-19-00244-CV, 2020 WL 5834335, at *6 (Tex. App.—Dallas Oct. 1, 2020, no pet.) (mem. op.) (internal citations omitted).

We conclude Kowalski satisfied her burden to raise a fact question as to pretext.  To prove that an employer's proffered reason for the adverse employment action is a pretext for discrimination, an employee can show that the explanation is "false or 'unworthy of credence,'" or that the employee is "'clearly better qualified' than the person selected for the position."  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007) (internal footnotes and citations

omitted).  Richard Humphrey, Parkland's Chief Financial Officer (CFO), testified that he was hired in August 2017 and immediately began considering a long-term restructuring process.  Humphrey's first priority was replacing Putz with a permanent SVP Finance.  To do that, he envisioned three options: (1) replace Putz but upgrade the position by increasing the responsibilities, moving more functions to report to that position, and grooming that person to become his possible successor; (2) downgrade the SVP Finance position to a senior or executive level director and move other functions to another direct-reporting structure; or (3) hire a permanent SVP Finance but not immediately incorporate any restructuring.  Even with these options, Humphrey had concerns about the redundancy and inefficiency of the multilevel reporting structure and believed that the Director of Accounting or the Senior Director of Finance, Kowalski's position, would also need to be restructured.

Humphrey decided to proceed with the first option and posted the SVP Finance position on October 2, 2017.  As of late December 2017, or early January 2018, Parkland had been unable to hire someone to replace Putz, so Humphrey decided to pursue the second option.  The job description for the Controller position was written on January 17, 2018, and the proposed restructuring—eliminating Kowalski's position and creating the new Controller position—was approved by the CEO on January 19, the same day Kowalski was told her position had been eliminated.  The evidence shows that Parkland representatives were not certain as to when the Controller position was posted, but Kowalski testified it was not posted

until Saturday, January 20, the day after she was escorted out of the building. Regardless of when the job became available, it is undisputed that neither Humphrey nor Putz told her about the restructuring, talked with her about the possibility of moving to the new Controller position, or even encouraged her to apply for it.

Parkland maintains that Humphrey had decided to restructure the finance department and eliminate Kowalski's position before she ever requested the keyboard and mouse tray, but the evidence does not indicate he decided to eliminate Kowalski's position until January, when he decided to move forward with the second restructuring option and create the Controller position. On December 29, before he made that decision, Putz emailed him and alerted him that Kowalski put in a request for a workspace configuration for neck and back issues and that her neck and back issues were pre-existing.

Additionally, the evidence does not show that the Controller position was actually a downgraded position of the SVP Finance position as Humphrey testified. The new organizational chart attached to Parkland's plea to the jurisdiction includes a SVP Finance position *and* the new Controller position. And, the evidence shows that Putz remained the SVP of Finance until June 29, 2018. Thus, it was not until almost July, five months after Kowalski's position had been eliminated, that the SVP Finance position was eliminated, which was the position Humphrey was primarily focused on when restructuring the department.

Parkland representatives testified that Kowalski was not eliminated for performance reasons, and Humphrey even testified that he was looking for Kowalski to apply for the Controller position. However, he also testified that he had limited interactions with her, she seemed unengaged in meetings, he was concerned about her initiative, nothing sparked his interest in moving her to an expanded role, and he had no idea about her qualifications or education. "An employer's inconsistent explanations for an employment decision 'cast doubt' on the truthfulness of those explanations." *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017).

Instead of discussing the position with Kowalski, Humphrey invited a candidate who applied for the SVP Finance position in December 2017, but was not qualified for that position, to apply for the Controller position. In response to an interrogatory, Parkland answered, "In January, Mr. Humphrey decided to hire Ms. Lee into a lower-level position as the Controller, so that she could grow into the SVP Finance position." Thus, the evidence shows that it would have been futile for Kowalski to apply since Humphrey had already decided who to place in the new position before Kowalski's employment with Parkland ended.

The evidence also shows that Kowalski talked with the VP of Revenue Cycle about coming on board in Patient Financial Services, but he decided not to bring her on board after talking with Humphrey. This evidence, along with Humphrey's knowledge of Kowalski's disability and his shifting and inconsistent explanations

regarding Kowalski and the Controller position, create a fact issue as to whether Humphrey's reason for Kowalski's elimination is credible.

In addition, several Parkland employees, including those in upper management, agreed that Kowalski was qualified for the Controller position. Although Parkland disputes it, we conclude that Kowalski presented some evidence that she was "clearly better qualified" than the person Parkland hired for the Controller position. *See Burrell*, 482 F.3d at 412. Kowalski was a Certified Public Accountant (CPA), a mandatory requirement for her position as Director of Finance but listed only as "preferred" for the newly created Controller position even though it was structured to be a level higher than the Director of Finance position. The person Humphrey preselected for the Controller position did not have a CPA license. At the time of her job elimination, she was handling responsibilities that went above and beyond her job description and caught several errors in the department. Being a current employee of Parkland at the time of the restructuring also gave Kowalski significantly more experience in, and knowledge of, Parkland's policies and procedures as compared to hiring a person outside of Parkland. The evidence also showed that, after the restructure, Parkland had to hire another person to handle some of the duties and responsibilities that Kowalski was doing before she was eliminated.

Although not direct evidence that Parkland discriminated against Kowalski specifically, Ballew's testimony that Parkland had a pattern and practice of discrimination lends support to Kowalski's claim that Parkland's reason for

terminating was pretext for discrimination. Ballew is the former Director of Patient Financial Services at Parkland. He worked at Parkland for eighteen years, and his last day of employment was June 13, 2019. Ballew's testimony on this issue is as follows:

> 6. I personally observed that Parkland's pattern and regular practice was to make false statements and claims about persons with medical conditions in an effort to justify terminations. I regularly attended meetings in which this was the express discussion of senior vice presidents, directors, managers, and supervisors. Parkland regularly terminated employees because of medical conditions based on pretext used to cover up the discrimination. This occurred for years, up to and including the time that Ms. Kowalski was terminated.
>
> . . . .
>
> 8. I personally observed employees terminated from medical conditions and retaliated against if they complained. I personally heard managers say that they were terminating employees because of medical conditions and because the employees complained about being treated differently because of a medical condition. At least 10 to 15 employees who criticized and complained to management were later fired.
>
> 9. It is part of Parkland's culture to terminate employees under the pretense of a "reduction in force" those who complained or were disabled. It is openly discussed among Parkland employees that this is the easiest way to get rid of employees who complained or are disabled.

Based on the record before us, we conclude that Kowalski presented more than a scintilla of evidence on each challenged jurisdictional fact of her disability discrimination claim. Therefore, the trial court did not err in denying Parkland's plea to the jurisdiction as to Kowalski's claim for disability discrimination.

–24–

## Kowalski's Claim for Retaliation

The Texas Labor Code also prohibits an employer from retaliating or discriminating against an employee who "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." TEX. LAB. CODE § 21.055. "A retaliation claim is related to, but distinct from, a discrimination claim, and one may be viable even when the other is not. Unlike a discrimination claim, a retaliation claim focuses on the employer's response to an employee's protected activity, such as making a discrimination complaint." *Alamo Heights*, 544 S.W.3d at 763–64. Like with discrimination claims, the *McDonnell Douglas* framework applies when the employee is seeking to prove a retaliation case with circumstantial evidence. *Id.* at 764, 782.

To establish a prima facie case of retaliation, an employee must show that (1) she engaged in a protected activity; (2) she experienced a material adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Id.* at 782. The causation standard for establishing a prima facie case under the *McDonnell Douglas* framework "is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action." *Id.*

Parkland argues that Kowalski failed to establish a prima facie case of retaliation because she did not engage in a protected activity as defined by the labor

code and, even if she did, there is no evidence of a causal link between that protected activity and her position being eliminated. We first determine whether Kowalski presented evidence that she engaged in one of the protected activities listed in section 21.055.

The evidence shows that Kowalski did not file a charge with the EEOC until after her job was eliminated and she was no longer employed by Parkland. Therefore, Parkland's alleged retaliation cannot be in response to her making or filing a charge with the EEOC. *See* TEX. LAB. CODE § 21.055(2). Kowalski also presented no evidence that she testified, assisted, or participated in an investigation, proceeding, or hearing prior to her discharge. *See id.* § 21.055(4). The two remaining protected activities are "opposes a discriminatory practice" and "files a complaint." *See id.* § 21.055(1), (3). Although the ADA prohibits retaliation against simply making an accommodation request, the Texas Labor Code is not so broad. *Lara*, 625 S.W.3d at 58–59. The supreme court has explained that, in order for an accommodation request or complaint to count as protected activity under the Texas Labor Code, it must have alerted the governmental entity to the plaintiff's belief that disability discrimination was at issue. *Id.* at 59–60. "'Magic words' are not required to invoke the TCHRA's anti-retaliation protection." *Alamo Heights*, 544 S.W.3d at 786. But the employee must do more than complain of discrimination; her complaint must indicate that the discrimination was motivated by her disability. *See id.* at 786–87.

Here, the evidence shows that, on January 5 and 7, 2018, Kowalski complained to Putz about the process she was having to go through and that Haley Evans (or Haley King), a Risk Manager who handled worker's compensation claims and told Kowalski that she could just request a keyboard tray from facilities, did not have to go through a similar process. Putz then forwarded Kowalski's concerns to Vishal Bhalla, the Director of Client & Talent Experience. On January 8, Bhalla emailed the Director of Employee Relations and told him that Kowalski was "not initially looking for disability – now she is being asked to do so" and informed him that "there seems to be inconsistency between how another employee was treated vs this one." Although there is no evidence that Kowalski's complaint was further escalated up the chain of command or treated as a complaint of discrimination by Parkland such that Parkland investigated it, we conclude this evidence is more than a scintilla to raise a fact question as to whether Kowalski was engaged in a protected activity. Her complaint essentially claimed that she was being regarded as disabled when she was not and that she was being forced to go through a more extensive process to obtain a keyboard tray than others who had similar medical issues.

The timeline of Kowalski's complaint to management on January 5 and 7 and thereafter being eliminated on January 19 also satisfies her burden to establish prima facie evidence of a causal link between the protected activity and the adverse action. *See id.* at 782 (burden to establish prima facie evidence of causation element can be satisfied by proving close timing between protected activity and adverse action). We

acknowledge that "[c]arrying out a previously planned employment decision is no evidence of causation" even at the prima-facie stage. *Id.* at 790. However, as discussed above, Parkland's evidence does not conclusively establish that Humphrey made the decision to eliminate Kowalski's position before she made a disability discrimination complaint. Instead, the evidence shows that Humphrey's main concern was replacing Putz, an interim executive, with a permanent employee. Humphrey first decided to replace Putz with another SVP of Finance but was unable to fulfill that position. He then decided to pursue his second option, which was to create the Controller position. The goal in creating that position was still to replace Putz; however, the Controller position did not immediately replace Putz as she remained interim SVP until June, five months after the Controller position was posted. Additionally, Humphrey testified that he was considering eliminating one of two positions, but the record does not show that he chose Kowalski's position until sometime in January 2018, after Putz alerted him to Kowalski's request for a keyboard and characterized her pain as preexisting and after Kowalski complained to management about how she was being treated.

As discussed above in relation to Kowalski's discrimination claim, Parkland presented evidence that it eliminated Kowalski's position due to a reduction in force and not because it retaliated against her. Therefore, Parkland's evidence defeated any presumption of retaliation, and Kowalski was required to come forward with some evidence raising a fact issue on retaliatory intent in order to survive Parkland's

jurisdictional plea to her retaliation claim. *Id.* at 764. Under this third part of the *McDonnell Douglas* framework, "the employee must prove the adverse action would not have occurred 'but for' the protected activity." *Id.* at 782–83, 790 (applying "but-for" standard because parties advocated it should apply); *see also Siaw-Afriyie*, 2020 WL 5834335, at *6 ("Until the supreme court requires otherwise, we follow our own precedent and evaluate TCHRA retaliation claims under a but-for causation standard.").

> In evaluating but-for causation evidence in retaliation cases, we examine all of the circumstances, including temporal proximity between the protected activity and the adverse action, knowledge of the protected activity, expression of a negative attitude toward the employee's protected activity, failure to adhere to relevant established company policies, discriminatory treatment in comparison to similarly situated employees, and evidence the employer's stated reason is false.

*Alamo Heights*, 544 S.W.3d at 790.

Here, the evidence shows that the temporal proximity—14 days—between the protected activity (January 5) and the adverse action (January 19) was "very close." *See id.* ("Temporal proximity is relevant to [but-for] causation when it is 'very close.'"). Additionally, although Parkland argues that the procedure Kowalski was required to complete was the procedure required for all workspace accommodations, the evidence shows that many of those involved in trying to help Kowalski receive a keyboard and mouse tray did not know Parkland's protocol. It was not until the request reached the Director of Employee Relations in OTM that Kowalski was directed to contact CareWorks regarding her "reasonable accommodation

–29–

complaint." Furthermore, at least three other employees had submitted a request for a keyboard tray and, after Occupational Health performed an ergonomic evaluation, they each received a keyboard tray within a couple weeks of their request. Unlike Kowalski, they were not required to submit ADA accommodation forms or be seen by a physician.

This evidence shows that Parkland did not consistently apply the same process in order to accommodate an employee's need for ergonomic evaluation and workspace reconfiguration due to some sort of pain or discomfort while working at his or her desk. Moreover, Jim Dunn, the Executive VP of OTM at the time, reviewed the emails regarding Kowalski's request for a keyboard and mouse tray and testified in his deposition that it looked like it was a miscommunication that blew up to something bigger and it seemed to him that it was something that could have been resolved very quickly.

As set out above in our discussion regarding Kowalski's discrimination claim, there is also evidence that shows Humphrey's proffered reason for eliminating Kowalski's position was false. Additionally, Kowalski testified that she explained her situation to Rich who was the VP of Compliance. According to Kowalski, Rich told her that she was being retaliated against and that reporting the discriminatory treatment to Parkland's human resource department only makes things worse. In addition to Ballew's statements in his declaration set out above describing Parkland's pattern and practice of eliminating employees' jobs when they suffered

from a medical condition or disability and complained about the way they were being treated, Ballew testified to the following in his deposition:

> You don't - - at Parkland, you don't report on leadership, or you get - - you get rifted. If - - if you create an issue with leadership at Parkland, then you're basically signing your own death warrant, because it's only a matter of time before they eliminate your position, and you're gone. So if - - if you value your position, you know, if you have a family to feed, if you're relying upon income and insurance, you don't do that. And that's always been the case my entire 18-year career at Parkland. That is the culture.

He also testified in his declaration that "[i]f Parkland did not want to retaliate against someone, the regular practice when positions were being repurposed was to give the person affected prior notice and allow them the opportunity, and even request them to stay in the repurposed position."

Based on the totality of the circumstantial evidence presented, we conclude that Kowalski carried her burden to produce some controverting evidence of a retaliatory motive for the elimination of her position and, therefore, the trial court properly denied Parkland's plea to the jurisdiction with respect to Kowalski's claim for unlawful retaliation under section 21.055. Parkland's second issue is overruled.

## Conclusion

Kowalski presented more than a scintilla of evidence of each challenged jurisdictional fact as to her claims for disability discrimination and retaliation. Therefore, having overruled Parkland's issue challenging the trial court's rulings on its evidentiary objections and concluding that Kowalski satisfied her burden of proof

–31–

at this stage of the litigation, we affirm the trial court's order denying Parkland's plea to the jurisdiction and motion for summary judgment.

/Craig Smith/
CRAIG SMITH
JUSTICE

Miskel, J. dissenting.

210379F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DALLAS COUNTY HOSPITAL
DISTRICT D/B/A PARKLAND
HEALTH AND HOSPITAL
SYSTEM, Appellant

No. 05-21-00379-CV          V.

SHERI KOWALSKI, Appellee

On Appeal from the County Court at
Law No. 5, Dallas County, Texas
Trial Court Cause No. CC-19-03723-
E.
Opinion delivered by Justice Smith.
Justices Miskel and Kennedy
participating.

In accordance with this Court's opinion of this date, the order of the trial court
is **AFFIRMED**.

It is **ORDERED** that appellee SHERI KOWALSKI recover her costs of this
appeal from appellant DALLAS COUNTY HOSPITAL DISTRICT D/B/A
PARKLAND HEALTH AND HOSPITAL SYSTEM.

Judgment entered this 5th day of April 2023.